Nov. Term;
1835.

JOHNSTON *v.* GLANCY and Others.

JOHNSTON
v.
GLANCY.

The purchaser of real estate in the possesion of a third person, is bound to take notice of such person's title to the possession; whether his title be legal or equitable.

Payment of the purchase-money of real estate is not of itself a sufficient part performance to take a case out of the statute of frauds.

The purchaser's entering into possession of the estate in pursuance of the contract, is sufficient to take the case out of the statute.

But the mere continuance in possession of the premises, by a tenant after his purchase, is not sufficient for that purpose.

Tuesday,
December 1.

ERROR to the *Shelby* Circuit Court:

STEVENS, J.—*James H. Johnston* filed a bill in chancery against *Joseph Glancy, John Moore,* and *John Glancy;* to obtain a legal title to a lot of land in the town of *Marion,* county of *Shelby,* and state of *Indiana,* numbered 24 on the plat of the town. The bill, answers, and depositions; establish the following facts:

In the month of *October,* 1831, and for some time before, the above-named *Joseph Glancy* was seized in fee of the above-described lot of land, on which there was a log cabin, part of the logs of which were hewed, and part scored but not hewed; that said *Johnston,* the complainant, lived in the cabin on the lot as tenant to the said *Joseph;* that about the first of *October,* 1831, the said *Joseph* sold the lot to *Johnston,* the tenant, for 40 or 45 dollars, which *Johnston* paid him in work; that *Johnston* remained in the uninterrupted possession from that time until the commencement of this suit, and still so remains in possession; that after *Johnston* had so purchased said lot, he put a shingled roof on the cabin, raised a frame house, made a board fence round the lot, and dug a well on the same; making permanent improvements worth the sum of 80 dollars as estimated by the complainant, by the witnesses at not less than 50 dollars, and by the defendants at 25 dollars; that *Johnston* never held any contract in writing respecting the purchase, but the said *Joseph* was to have made him a deed, and a day was once fixed to make the deed, but the said *Joseph* failed to attend, and it was not made; that afterwards on the 12th of *January,* 1833, the said *Joseph* conveyed the said lot, together with all his other real estate, consisting of lands, mills, &c. of great value, to the above-named *John Glan-*

*cy*, his brother, and the above-named *John Moore*, his brother-in-law, and on the same day left the country and has never since returned; that the said *John Glancy* and *John Moore*, to whom the said *Joseph* conveyed, well knew, at the time of receiving the conveyance, of the possession and claim of the complainant, *Johnston*, of, in, and to, the premises in question.

In addition to these facts, the complainant alleges in his bill, that the conveyance by the said *Joseph* to the said *John Glancy* and *John Moore* was made without consideration, and was fraudulent; that it was made expressly to defraud the complainant out of his lot, and to defraud the creditors generally of said *Joseph*. As to this allegation there is no direct proof; but it is not denied by any of the answers of the defendants. Neither of them asserts, that any consideration whatever passed from the said *John Glancy* and *John Moore* to the said *Joseph* for the lots, lands, mills, &c. conveyed to them by the said *Joseph*.

The defendants, in their answers, do not deny the sale of the lot to *Johnston*, but they deny his having paid for it. That fact, however, is clearly proved by all the witnesses.

The defendants rest their defence on the statute of frauds and perjuries, which they plead in bar, and on which they appear to rely with much confidence.

Previously to the filing of this bill, *John Glancy* and *John Moore*, the persons to whom the said *Joseph* had conveyed, commenced an action of disseisin against *Johnston*, the complainant, to dispossess him of the lot in dispute; and this bill was filed praying for a perpetual injunction against them, and for a decree compelling them to convey to him, the said *Johnston*, &c., and for general relief in the premises, &c. An interlocutory injunction was granted; but, upon a final hearing, that injunction was dissolved, and the bill dismissed at the costs of the complainant.

The only question of any weight in the case is, whether under all the facts presented by this record, a specific execution of this parol contract between *Joseph Glancy* and the complainant, can be enforced against the plea of the statute of frauds, pleaded and insisted on by the defendants?

Before entering into that question, we will notice a few minor objections raised by the defendants' counsel in argument.

The defendants' counsel insists that the grantees, *Glancy* and *Moore,* cannot be affected by the equitable claim set up by *Johnston;* they being subsequent purchasers without notice of this parol contract. To this it may be answered, that that objection is not, as to matter of fact, sustained by the record. The complainant has expressly charged in his bill that these defendants are volunteers, and that they had notice of his claim. This charge they have not, either directly or indirectly, denied or traversed. They have tacitly admitted that they are volunteers, and have expressly admitted that they knew that the complainant was in possession of the premises in dispute; and it follows as a legal consequence, if they knew of his possession, they were bound to take notice of his title to that possession, whether it was legal or equitable. But that is not all; it is directly proven by one of the depositions that they knew that *Johnston* claimed the lot as his own. By these facts we are relieved from any difficulty as to that objection. These defendants cannot be viewed in the light of *bona fide* purchasers, for value, without notice. They have no protection that is not applicable to their grantor; they stand in his shoes, and as to the claim of *Johnston* are mere trustees (1).

The next objection is, that there is a variance between the bill, in several material allegations, and the proof; that it is stated in the bill that the complainant demanded a deed of the said *Joseph* before he left the country, and the proof is that he only demanded a bond for the deed; and that it is alleged in the bill, that the complainant purchased the lot in question for 45 dollars, and that he duly paid the amount to the vendor, without averring how he paid it, and the proof shows that he paid it in work. This objection as to these supposed variances between the proof and the allegations is wholly untenable. As to his making a demand of a deed, it is immaterial whether that charge is true or false; his right does not grow out of a demand; he was in full possession and at all times entitled to a deed, whether he demanded it or not. And as to the contradiction between the proof of payment and the allegation in the bill, there is none. The proof, it is true, goes something further than the bill: the bill simply asserts the fact of having paid the 45 dollars, without stating how it was paid; the proof establishes the fact of the payment of the 45 dollars, and also

explains how it was paid; in this there is certainly no contradiction.

The next objection is, that the whole proof in the case, when taken together, is vague and uncertain. It is a well settled rule in cases of this kind, that the contract as laid in the bill must be clear and satisfactory, not only as to the description of the land, but also as to the amount of the purchase-money, time of payment, &c.; and the proof must be equally clear and satisfactory; that is, the whole proof when taken together must be such, that the Court can satisfactorily see that the allegations of the bill are proven. Sugd. on Vend. 77 to 90. We cannot, however, in this case see either vagueness, confusion, or contradiction in the evidence. There are three depositions, and the whole three agree precisely. Some of the witnesses swear to many facts that the others know nothing about; but as to the facts of which they do know, there is a remarkable and striking harmony. The evidence to our minds is very clear, and well sustains the bill; and the bill is plain, direct, and certain, in all its allegations.

We now come to the main question respecting the statute of frauds. We here meet with objections that are not so easily disposed of. The importance of the questions raised is acknowledged, and the arguments of the defendants' counsel have been duly weighed and considered.

The statute of frauds among other things enacts:—That all leases, estates, interests of freehold or terms of years, or any uncertain interest of, in, or out of, any messuages, lands, tenements, or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorised by writing, shall be only leases or estates at will, &c., except certain leases enumerated; and that no action shall be brought whereby to charge any person upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged thereby, or some person by him thereunto lawfully authorised (2). In *England*, and also in the several states of this Union, there are statutes in substance similar to this. The object of all such statutes is to prevent frauds and

13

perjuries; hence, in all cases where there appears to be an almost impossibility of the commission of those offences, Courts have endeavoured to take them out of the statute and enforce their performance, although they may not be in writing. The statute was not intended to create or protect fraud; and therefore Courts have taken many cases out of the statute, not entirely on the principle of there being no danger of perjury, but for the purpose of preventing one of the parties to a contract from committing a fraud on the other, under the sanction of the statute.

Courts of equity have determined, and it seems now to be the settled rule of decision, that parol agreements may be enforced if the agreement has been in part performed, provided such part performance be admitted by the party charged, or be satisfactorily proven. What acts amount to such part performance as will take a parol contract out of the statute, is not entirely clear of doubt. It was for a while held, that the payment of part or all of the purchase-money was such part performance; but that doctrine is now entirely rejected. Payment in whole or in part is a strong auxiliary fact in establishing part performance, but it is not of itself sufficient (3). The ground upon which relief is granted in these cases is fraud; and the great leading principle by which Courts are governed, is, that there must be some act of performance done, that is palpable and evident to the senses of all,—an act that can be relied on as certain, about which there can be no misunderstanding, and which does not rest solely in the recollection, understanding, or belief of witnesses, such as absolute and visible possession of the premises, the actual building of houses, or the making of other lasting improvements. But even these acts of part performance must be done with a direct view of the agreement being performed, and be such acts as could be done with no other view, or the agreement will not be taken out of the statute.

If the purchaser was not previously in possession of the premises, and after the parol purchase he enters upon the estate with the assent of the vendor, such possession is always held as part performance, and takes the case out of the statute; and much more so, if after he enters he makes valuable and lasting improvements. But the taking of such possession without the knowledge, consent, or will of the vendor, will

not do. *Butcher* v. *Stapely*, 1 Vern. 363.—*Lacon* v. *Mertins*, 3 Atk. 1.—*Wills* v. *Stradling*, 3 Ves. jun. 378.—*Bowers* v. *Cator*, 4 Ves. jun. 91.—*Gregory* v. *Mighell*, 18 Ves. jun. 328.—*Kine* v. *Balfe*, 2 Ball & Beat. 343.—*Wilber* v. *Paine*, 1 Ohio Rep. 251.—*Wetmore* v. *White*, 2 Caines' Cas. 87.—*Givens* v. *Calder*, 2 Des. 171, 190.—Sugd. on Vend. 77 to 80.—*Tibbs* v. *Barker*, 1 Blackf. 58.—*Morpheit* v. *Jones*, 1 Swanst. 181.—*Buckmaster* v. *Harrop*, 13 Ves. jun. 474 (4). But possession by a tenant, who was in possession of the premises as a tenant at the time of the purchase, and who remains in possession, is not considered a part performance; for a tenant, of course, may continue in possession until he has notice to quit; and therefore the mere act of his continuing in possession amounts to nothing, and will not take the case out of the statute. *Wills* v. *Stradling*, 3 Ves. jun. 378.—*Savage* v. *Carroll*, 1 Ball & Beat. 265.—*Anthony* v. *Leftwich*, 3 Rand. 238.—2 Hovend. on Fr. 3.—Sugd. on Vend. 80.

In this case, the complainant at and long before the time of making the purchase, was in possession of the lot as tenant to the vendor; therefore, his continuance in possession cannot be considered as a part performance of the contract. There is some fluctuation in the decisions on this subject, and some contradiction in the books, as to how far Courts of equity may go in taking parol contracts out of the statute; and some cases have gone further than the principles stated above would warrant. We, however, are not disposed to carry such cases beyond the clear medium of the chain of decisions, which may be safely relied on: at that point we stop. In the case now before us, we are satisfied that a specific execution of the contract should not be decreed; yet we think that the Circuit Court did wrong in dismissing the complainant's bill: he is entitled to relief, and justice requires us to grant it to him without further expense or delay. When the specific execution of a parol contract cannot be decreed, by reason of the vendor's pleading the statute of frauds in bar of such decree, it is the duty of the Court to decree compensation to the complainant, to the amount of the purchase-money by him paid and interest thereon; and also for all beneficial and lasting improvements, which he may have made on the premises. 2 Hovend. on Fr. 4.—Sugd. on Vend. 78 and n.—*Anthony* v. *Leftwich*, supra.—

*Parkhurst* v. *Van Cortlandt,* 1 Johns. C. R. 273.—*King* v. *Bardeau,* 6 id. 38.—*Kelly* v. *Bradford,* 3 Bibb, 317.—*Phillips* v. *Thompson,* 1 Johns. C. R. 131.—*Forster* v. *Hale,* 3 Ves. 713. *Greenaway* v. *Adams,* 12 Ves. 395. In this case, it is certain that the plaintiff has sustained an injury by the acts of the defendants, and his claims are sufficient to authorise the interference of the Court in securing adequate compensation.

*Per Curiam.*—The decree of the Circuit Court is reversed with costs; and it is ordered, &c. that the complainant recover of *Joseph Glancy,* one of the defendants, the sum of 90 dollars, &c.; that the complainant retain possession of the premises till the said sum of 90 dollars and the costs be paid, &c.

*P. Sweetser,* for the plaintiff.
*C. Fletcher* and *O. Butler,* for the defendants.

(1) *Daniels* v. *Davison,* 16 Ves. jun. 249.—2 Sugd. on Vend. 338.—*Moreland* v. *Le Masters,* in this Court, *Nov.* term, 1837. But a purchaser, where the possession is vacant, is not bound to inquire of the late occupier what was the nature of his title; and therefore would not be held to have implied notice of the information which he might have obtained by inquiry. *Miles* v. *Langley,* 1 Russ. & Myl. 39.—2 Sugd. on Vend. supra.

(2) Rev. C. 1831, p. 269.—Accord. Rev. Stat. 1838, p. 311.

(3) The authorities on this subject are contradictory. The opinion in the text is sustained by a late eminent writer, who says: "It seems formerly to have been thought, that a deposit, or security, or payment of the purchase-money, or of a part of it, or at least of a considerable part of it, was such a part performance as took the case out of the statute. But that doctrine was open to much controversy, and is now finally overthrown." 2 Story's Eq. 64.

The same writer, after stating some of the grounds why part payment is not deemed a sufficient part performance to take a case out of the statute, says: "But a more general ground, and that which ought to be the governing rule in cases of this sort, is, that nothing is to be considered as a part performance, which does not put the party into a situation which is a fraud upon him, unless the agreement is performed. Thus, for instance, if upon a parol agreement a man is admitted into possession, he is made a trespasser, and is liable to answer as a trespasser, if there be no agreement valid in law or equity. Now, for the purpose of defending himself against a charge as a trespasser, and to account for the profits in such a case, the evidence of a parol agreement would seem to be admissible for his protection; and if admissible for such a purpose, there seems no reason why it should not be admissible throughout. A case still more cogent might be put, where a vendee, upon a parol agreement for a sale of land, should proceed to build a house on the land, in the confidence of a due completion of the contract. In such a case, there would be a manifest fraud upon the party, in permitting the vendor to escape from a due and strict fulfilment of such agreement. Such a case is certainly distinguishable from

that of part payment of the purchase-money; for the latter may be repaid, and the parties are then just where they were before, especially if repaid with interest. A man, who has parted with his money, is not in the situation of a man against whom an action may be brought, and who might otherwise suffer irreparable injury." 2 Story's Eq. 66.

(4) *Moreland* v. *Le Masters, Nov.* term, 1837, post.