THOMPSON *v.* THOMPSON.

It is a general rule that declarations of a vendor made after his conveyance, are not admissible in evidence to defeat it.

Where the grantor obtains possession of the grantee's deed, by delivery, or with the consent of the grantee, with a view to its cancellation, the grantee cannot recover the property; nor will he be permitted to allege that the deed is lost, and, thereupon, to give evidence of its contents.

This rule is limited to cases between the parties to the deed, and parties standing in the same relation to each other.

The jury, in this case, were instructed that "a deed which contains certain conditions subsequently to be performed by the purchaser, is void if he should fail and refuse to perform those conditions." *Held*, that the instruction, through not strictly correct, should not, when applied to the evidence in the case, be held erroneous.

An estate upon condition subsequent does not revert until entry for condition broken.

But where the grantor remained in possession until his death, and left his devisee of the premises in possession, he could not enter upon his own possession for condition broken, and the devisee stood in the same position.

But the devisee might set up his title in opposition to that of the grantee: he had at least an equity, and that was sufficient to enable him to defend his possession.

An instruction should be held to be correct if it would produce the proper result upon the facts of the case, whether technically accurate or not.

The consideration expressed, is the least important part of a deed, and may be varied to almost any extent by parol evidence. The estate created does not depend upon it, but upon the conditions and limitations contained in the instrument, descriptive of its quantity and duration, found generally in the premises, *habendum*, &c.

A condition cannot be annexed to the payment of a consideration proved *aliunde*.

Conditions subsequent are not favored by the law. Equity will often relieve against them; and it will never, except in extreme cases, lend its aid to divest an estate for a breach of such a condition. They are neither to be presumed, nor proved *aliunde*, except, perhaps, to turn a deed absolute into a mortgage.

Possession is not an essential part of an estate, and a stipulation to surrender

May Term,
1857.

THOMPSON
v.
THOMPSON.

it at a future day, does not divest an estate created by other parts of the deed.

Between the parties, a deed is good without a consideration.

A devisee is bound by the testator's deed, to the same extent as the testator himself would have been.

A party who destroys evidence by which his claim or title may be impeached, raises a strong, but not a conclusive presumption against its validity.

On proof of the existence of a paper, the testimony of the party who ought to have the custody of it touching its loss, with evidence of diligent search for it, is addressed to the Court; and if its loss is proved, evidence of its contents may go to the jury. If it be proved to be withheld or destroyed, every presumption will be indulged against the party, in reference to its character.

Admissions made in Court are conclusive, for the purposes of the trial; but admissions proved to have been made during the pendency of the suit, are not only not conclusive, but, generally, weak evidence; except such as are held conclusive on the ground of public policy.

A deed is good without a date.

Where a deed or other instrument is lost, the party is required to give some evidence that it once existed—though slight evidence is sufficient—and that a *bona fide* and diligent search for it has been unsuccessfully made, in the place where it was most likely to be found, if the nature of the case admits of such proof; after which his own affidavit is admissible to the fact of its loss.

Evidence of loss, is addressed to the Court; evidence of contents, to the jury, under the direction of the Court to the effect that vague and uncertain recollections are insufficient, and that a degree of precision of which memory is incapable, is not required.

The property and the estate conveyed, the conditions annexed, the signing, sealing, and delivery, must be proved with reasonable certainty.

A devisee takes as a purchaser, but not as a purchaser for a valuable consideration; and such only are affected by an estoppel *in pais*.

Such estoppel is rendered conclusive because others, ignorant of the facts, have acted upon the admissions of a party, expressed or implied from his conduct in derogation of his own rights.

Monday,
June 8.

APPEAL from the *Fountain* Circuit Court.

GOOKINS, J.—This was an action to recover real estate. Both parties claimed the property under *James A. Thompson*, deceased—*William Thompson*, the plaintiff, as purchaser, and *Martha E. Thompson*, the defendant, as his devisee. The judgment below was for the defendant.

The plaintiff claimed title under a deed alleged to have been made by the deceased, which was never recorded, and has been lost. One *Moore* testified that in 1839, he was residing with the deceased; that at his request he accompanied him to the house of a justice of the peace, residing some eight or ten miles off; that *James A. Thompson* ac-

knowledged before the justice a deed for the land in question to his brother, *William Thompson*; that it was a deed in fee simple, with warranty of title; that he read and witnessed it; that he could not remember the consideration expressed; that they returned home by way of *Covington*, the plaintiff's place of residence, where the deed was delivered to him. He believed the name of the justice was *Lewellyn.* The witness did not describe the lands by their congressional subdivisions and numbers, but identified one eighty-acre tract as the home farm, and three others as the *Shoafstall* farm—the two farms lying about a mile apart. The deceased lived on the home farm, which lay within about three-fourths of a mile of *Covington.*

The plaintiff deposed that the deed was lost; that he had made diligent search for it, and it could not be found; and that he had neglected to have it recorded.

It was proved that a justice by the name of *Lewellyn* resided at the time in *Wabash* township, *Fountain* county, eight or ten miles from *Covington,* who was dead; that the justice and the recorder resided, at the same time, in *Covington,* who were still alive; and no reason was given why the deed was not acknowledged before one of the latter, instead of before justice *Lewellyn.*

Frequent declarations of the deceased were testified to, mostly by members of the family, to the effect that he had sold the lands to the plaintiff, who was to support the father and mother, and that when he got his pay, he would have no further interest in them.

The administrator of the estate of *James A. Thompson* deceased, testified that he found, in a pocket-book of the deceased, the following obligation, in the plaintiff's handwriting:

" *May* 7th, 1839. I promise to pay *J. A. Thompson* 3,300 dollars, when he gives me possession of the lands which he is occupying at this time. *W. Thompson.*

" I further agree in the purchase of the lands to take care of father and mother, and maintain them as long as they live, from the time *J. A. Thompson* gives me possession of said lands. *W. Thompson.*"

The evidence of both parties showed that *J. A.* and *W. Thompson* came to *Indiana* and settled near *Covington* about 1826; that for many years they had been partners in a tannery on the home farm, in distilling, in merchandizing, and that they had erected together a warehouse. *J. A. Thompson* resided on the farm, and maintained his father and mother, until his death, in 1853. *James* owned two-thirds in the partnership, and *William* one-third interest.

The defendant was an illegitimate daughter of the deceased, he having never married. She lived with him until his death, and was a minor at the time of the trial. In his last sickness he made a will by which he devised his real estate to her, which he estimated to be worth 10,000 dollars. His personal property, which he estimated at the same, subject to certain specified apportionments, was left to follow the law of descents.

It appeared in evidence that the deceased claimed the land in question as his own, until his death; that he was in the continued occupancy of it; that he built a house upon it worth some 400 or 500 dollars, and had laid the foundation and prepared the materials for another, at the time of his death; that he had planted an orchard; and that at all times since 1839, he had appeared to be the owner.

Evidence was given to show that immediately after the death of *J. A. Thompson*, the plaintiff took possession of the money he had on hand, amounting to about 44 dollars, a part of which he paid to hands for harvesting on the place. His confessions were also proved to the effect that some papers which he found, which he stated were of no value, he burnt, among which were receipts for taxes. One *Kelly* administered on the estate (no executor having been named in the will), at the plaintiff's request. *Kelly* testified that the papers pertaining to the estate were delivered to him by the plaintiff; that at the time of so doing, he stated that his brother held a large note against him, which they searched for, but did not find; and that he afterwards found the note in the back part of an old pocket-book.

The plaintiff claimed that the estate was indebted to him over 5,000 dollars.

*David Brier*, who drew the will, testified that the deceased told him at that time that *William* was largely indebted to him, and seemed uneasy in consequence of the unsettled state of their mutual dealings.

The defendant gave in evidence, over the plaintiff's objection, declarations made by *J. A. Thompson* in 1846, when the plaintiff was not present, to the effect that he had bought *William* out, and that he owned all the property himself. Other declarations of the deceased, made at different times after the alleged conveyance to the plaintiff, to a similar effect, were given in evidence, over the plaintiff's objection—to which he excepted. As some of the instructions given at the instance of the defendant, assumed that there might have been a surrender of the deed, or a reconveyance by *William* to *James*, this testimony may have had an important bearing upon that question.

We think its admission was erroneous. The general rule is well settled that the declarations of a vendor, made after his conveyance, are not admissible in evidence to defeat it. *Doe* v. *Moore*, 4 Blackf. 445, and authorities there cited. It is true that the declarations of a party in possession, in derogation of his own title, may be given in evidence (*Doe* v. *Evans*, 8 Blackf. 322); and there are cases in which they are evidence to prove fraud in the vendor, after a pretended sale. But no fraud is alleged here, as against the grantor, nor would it avail the defense if it were alleged and proved. His conveyance would bind him and his devisee.

The plaintiff prayed the following instruction:

"If the jury believe that *James A. Thompson*, in the spring or summer of 1839, executed to *William Thompson* a deed for the land in dispute, in consideration of the execution to *James* by *William* of the note or agreement read in evidence; and that since the death of *James*, and before the commencement of this suit, *William* tendered to the administrator of the estate of *James* the amount of said note, and demanded possession of said lands; the jury

must find for the plaintiff, unless they are satisfied that *William Thompson* has reconveyed said lands to *James.*"

The foregoing was the second of a number of instructions prayed by the plaintiff. The third refused, and the fourth refused as asked, and given as modified, will be considered in connection with it, without setting them forth at length. They raise the question, whether the grantee in a conveyance can, as between himself and the grantor, defeat his right to recover the property, by any other means than by a reconveyance. On this question we think the law was correctly given to the jury in a modification of the fourth instruction. It is as follows:

"If the deceased got possession of the deed by delivery, or with the consent of *William*, with the view of surrendering the title conveyed by the deed, *William* cannot recover."

His inability to recover would not, in such a case, be because lands can be conveyed by parol; but because he has voluntarily destroyed the evidence of his title. He cannot be permitted to allege that a deed is lost, and thereupon give parol evidence of its contents, when he has surrendered it to be cancelled. The deed is not lost in such a case.

We say nothing, at present, in reference to a recorded deed, where the record is made, as under our statutes, of the same grade of evidence as the original. There would be this difference in the two cases: the parol proof might vary from the lost instrument, while the record would be a transcript of it. See *Mason* v. *Grant*, 21 Maine R. 160; *Wilson* v. *Cassidy*, 2 Ind. R. 562; *Speer* v. *Speer*, 7 *id.* 178; 1 Greenl. Ev. s. 265, note 3. We intentionally limit the rule, as here laid down, to cases between the parties to the deed, and those standing in the same relation to each other.

Other instructions prayed by the plaintiff, were refused; but as the same questions arise upon those which were given, they will not be separately noticed.

At the instance of the defendant, the Court instructed the jury that "a deed which contains certain conditions

subsequently to be performed by the purchaser, is void if he should fail and refuse to perform those conditions."

This instruction, though not strictly correct, should not, when applied to the evidence, be held erroneous. An estate upon condition subsequent, does not revert until entry for the condition broken. 4 Kent's Comm. 122, *et seq.*— 2 Black. Comm. 155, 165.— *Cross* v. *Carson*, 8 Blackf. 138. —*Doe* v. *Cassiday*, at the present term (1). But the evidence shows that *J. A. Thompson* remained in possession until his death, and that he left the defendant in possession likewise, as his devisee. He could not enter upon his own possession, for condition broken; and, although he might, perhaps, under the circumstances, have proceeded by action to divest the estate of the grantee, it would have been a useless act, which the law does not require. The defendant set up her title in opposition to that of the plaintiff in this action, and we are of the opinion that that was sufficient. She had an equity, at least, and that was all she needed to defend her possession. 2 R. S. p. 39, s. 56, subsec. 3. An instruction should be held right if it would produce the proper result upon the facts of the case, whether technically accurate or not. *Shook* v. *The State*, 6 Ind. R. 113.

The second instruction given, at the instance of the defendant, is as follows:

" If the jury should believe, from the evidence in this case, that *William Thompson* purchased, and received a deed for, the land in controversy, from *James A. Thompson*, and that a part of the consideration of the deed was the support and maintenance by *William* of their father and mother, the deed is void if *William* failed to comply with that stipulation until the death of their father rendered its performance impossible by him."

We cannot subscribe to this doctrine. The instruction is not perspicuously worded, and its precise import is not clear. It is objectionable for that reason. We understand, however, that it proposes to give a construction to the deed, by proof of the nature of a part of the consideration agreed to be given for the land; and this is not predicated of a

consideration expressed in the deed alone, but would include one proved *aliunde*. The consideration expressed is the least important part of the deed, and may be varied to almost any extent, by parol evidence. *Rockhill* v. *Spraggs*, at the present term (2). The estate created does not depend upon it, but upon the conditions and limitations contained in the instrument, descriptive of its quantity and duration, found generally in the premises, *habendum*, &c. 4 Kent's Comm. 468. We do not pretend to say that a deed might not be so drawn as to annex a condition to the payment of the consideration; but we understand this instruction to include a consideration proved as well as one expressed. None of the cases referred to (*Cross* v. *Carson*, 8 Blackf. 138; *Stone* v. *Huxford, id.* 452; *Hefner* v. *Yount, id.* 455; or *Leach* v. *Leach*, 4 Ind. R. 628), are at variance with this view. In the latter case, the bond which contained the condition, and the deed, were construed together as one instrument. The estate was voidable, not void. Conditions subsequent are no favorites of the law. 4 Kent's Comm. 129. Equity will often relieve against them, but will never, except in extreme cases, lend its aid to divest an estate for a breach of such condition. *Id.* 130. They are neither to be presumed nor proved *aliunde*—except, perhaps, to turn a deed absolute into a mortgage; and a close scrutiny of the authorities will show that even that is not an undoubted proposition.

The third instruction was erroneous. It was as follows:

"A valid deed must, on its face, carry immediate possession. It is void, as a deed, if it stipulates for the surrender of possession at a future or uncertain time."

It was an ancient rule of the common law that an estate of freehold could not be created to take effect in the future (2 Black. Comm. 165); and so it was held in *Welsh* v. *Foster*, 12 Mass. R. 93; *Gale* v. *Coburn*, 18 Pick. 397; and *Brewer* v. *Hardy*, 22 *id.* 376. Whether that rule would apply to the assurances now in use with us, it is not necessary to inquire. Mere possession is no essential part of the estate, and a stipulation to surrender it at a future day

could not divest an estate created by other parts of the deed.

The fourth instruction given, supposes a conveyance by the deceased to the plaintiff; a parol repurchase by the vendor, and full payment of the purchase-money; and his continuance in possession until his death, making lasting and valuable improvements under the immediate notice of the plaintiff. The retransfer, under such circumstances, the jury were instructed, would not be within the statute of frauds.

This, the appellant insists was erroneous. Whether strictly correct or not, it would be no ground for reversing the judgment; because, upon the assumed state of facts, the plaintiff would not have been entitled to a verdict. See authorities, *supra.* In *Johnston* v. *Glancy*, 4 Blackf. 94, it was held that the entering into possession pursuant to a parol purchase, would take the case out of the statute; but that a mere continuing in possession by one purchasing while thus in possession, was not sufficient. But in the same case it was held that the purchaser would not be turned out until the purchase-money was repaid. See, also, *Shirley* v. *Shirley*, 7 Blackf. 452.

The following instruction was given at the instance of the defendant:

" The consideration named in a deed is one of its most essential stipulations; and in any attempt before a Court to establish a lost deed, it is indispensable that the consideration it contained should be clearly proved."

This was erroneous. Between the parties, a deed is good without a consideration. *Doe* v. *Hurd*, 7 Blackf. 510. A devisee is bound by the testator's deed equally with himself.

The following instruction was given at the instance of the defendant:

" If the jury believe, from the evidence, that *William Thompson*, the plaintiff, burnt, or in any way destroyed, any of the papers of the deceased, *James A. Thompson*, without the knowledge and consent of those who were interested in the estate of said deceased, it devolves on him to

show by proof other than his own statements, what those papers contained; and on his failure to do so, the law raises the presumption against him, that they were of the highest value to the defendant in this suit, and entitles her to a verdict."

It is undoubtedly true, that a party who destroys the evidence by which his claim or title may be impeached, raises a strong presumption against the validity of his claim.   And if the plaintiff destroyed papers of the estate, and especially receipts for taxes, which are important documents, involving, in many instances, the validity of a title, he committed a great wrong; but yet the presumption against him would not be of that conclusive character indicated by the instruction.   The jury were told, in effect, that if the plaintiff destroyed *any* papers of the deceased, the defendant was entitled to their verdict.   The law of nations, as recognized in continental *Europe*, under certain circumstances, raises a conclusive presumption against the spoliator of papers indicating the national character of a vessel (1 Kent's Comm. 157, 158); but even that rule does not ordinarily prevail in *England* and the *United States*. 1 Greenl. Ev. s. 31.— *The Pizarro*, 2 Wheat. 242, note (*e*). This rule has no place in the Courts of common law.   On proof of the existence of a paper, the testimony of the party who ought to have the custody of it touching its loss, with evidence of diligent search for it, is addressed to the Court.   If its loss is established, he is allowed to go to the jury with evidence of its contents.   But his adversary may prove that he has withheld or destroyed it, and if he satisfactorily establish that point, every presumption will be indulged against him, in reference to its character. 2 Cow. and Hill's Phil. Ev. 293.—3 *id.* 1193.—*Life and Fire Insurance Company* v. *Mechanics' Fire Insurance Company*, 7 Wend. 31.   The rule is well stated by SUTHERLAND, J., in the case last referred to.

The fifteenth instruction given was as follows:

"The admissions made against himself by a party to a cause, pending the suit concerning the matters in controversy, are conclusive against him."

We know no law for this instruction.  Admissions made in Court, for the purposes of the trial are conclusive; but others proved to have been made during the pendency of the suit, are not only not conclusive, but generally weak evidence.  They are obviously strong or weak, according to the circumstances under which they are testified to have been made.  We except, of course, those admissions which are held conclusive on grounds of public policy.  1 Greenl. Ev. s. 210.

The foregoing, with some other instructions, were given upon the prayer of the defendant.  The Court, of its own motion, instructed the jury that "in making proof of the existence and contents of a deed which is lost, the party must prove its contents, which embrace the conditions and covenants it contains, the consideration and date of the deed, and its delivery.  It is not sufficient to prove generally that it was a warranty deed, &c.  He must substantially prove such parts of the deed as will enable the Court to say what the legal effect of the deed is, without relying upon the witnesses' opinion as to what such legal effect is."

This instruction imposed too great a burden upon the plaintiff.  The jury were instructed among other things, that the date of the lost deed must be proved.  A deed is good without a date.  The will on which the defendant relies in this case has no date.

In regard to the mode of proving a lost instrument, Mr. GREENLEAF says: "If the instrument is lost, the party is required to give some evidence that such a paper once existed—though slight evidence is sufficient for this purpose— and that a *bona fide* and diligent search has been unsuccessfully made for it, in the place where it was most likely to be found, if the nature of the case admits of such proof; after which, his own affidavit is admissible to the fact of its loss.  The evidence of loss is addressed to the Court, and not to the jury."  1 Greenl. Ev. s. 558.  Proof of its contents is necessarily addressed to the jury, but under the direction of the Court, that on the one hand, vague and uncertain recollections will not do (*Id.* note 1; *Metcalf* v. *Van Benthuysen*, 3 Comst. 424), and on the other, that a

degree of precision which the memory never retains, is not required. The property conveyed, the estate created, the conditions annexed, the signing, sealing, and delivery, are required to be proved with reasonable certainty, by witnesses who can testify clearly to its tenor and contents. Had the defendant intended, in this case, to object to the character of the proof, she should have done so at the proper time. All the evidence went to the jury without objection. Whether it was sufficient or not, it was their province to decide.

The following instruction was given:

"If the jury believe, from the evidence, that the deed was made in 1839, and that it was on the condition mentioned in the paper signed; and that ever since that time the land has been held, and sold, and improved by *James*, with the knowledge of *William*, by the erection of lasting and valuable improvements; *William* is estopped from setting up title to it in the hands of the devisee."

This is an erroneous application of the doctrine of estoppel. Whatever presumptions may arise from the facts assumed, should have been left to the jury. But the devisee stands upon the title of the devisor. Whatever he knew about the state of the title, has the same effect as if known to her. A devisee takes as a purchaser, but not as a purchaser for a valuable consideration, and they only are affected by an estoppel *in pais*. Such estoppel is rendered conclusive because others, ignorant of the facts, have acted upon the admissions of a party, expressed or implied from his conduct, in derogation of his own rights. 1 Greenl. Ev. s. 207.—*Gatling* v. *Rodman*, 6 Ind. R. 289.—*Barnes* v. *McKay*, 7 id. 301.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*Z. Baird*, *S. A. Huff*, *J. M. La Rue*, *S. C. Willson*, and *J. E. McDonald*, for the appellant (3).

*E. A. Hannegan*, for the appellee (4).

(1) *Ante*, 63.
(2) *Ante*, 30.  See note to that case for authorities.

(3) *Willson* and *McDonald*, for the appellant, cited authority to the following points:

After proving the execution and delivery of a deed, the grantee might prove the admissions of the grantor, by way of corroborating the other evidence, and to make particular pieces and quantities of land more certain; but such admissions could not supply the place of positive proof of the execution and delivery of a deed, for that would permit proof of the conveyance of land by parol. *McBurney* v. *Cutler*, 18 Barb. S. C. 203.

The general doctrine, as to the character of the parol evidence necessary to establish the execution and contents of a written instrument, that has been lost or destroyed, we admit to be, "that no vague, uncertain recollection concerning its stipulations, ought to supply the place of the written instrument itself, but that the substance of the agreement ought to be proved satisfactorily." *Tayloe* v. *Riggs*, 1 Pet. 591 to 600. And again, "the proof of the contents of a lost paper ought to be, the best the party has it in his power to produce, and at all events, such as to leave no reasonable doubt as to the substantial parts of the paper." *Renner* v. *Bank of Columbia*, 9 Wheat. 581 to 700.

The legal title to real estate, in this state, is transferred by deed, and vests on delivery of the deed, and a subsequent resale, accompanied by possession, and a surrender and cancellation of the original deed, will not revest the legal title, and can only be considered as a contract to sell. *Orth* v. *Jennings*, 8 Blackf. 420.

(4) Mr. *Hannegan*, for the appellee, cited authorities to the following points:

"A memorandum on the margin of a promissory note, made at the time of signing, will be considered as a part of the note, if it contain an important qualification of the contract." *Fletcher* v. *Blodgett*, 16 Verm. R. 26.—*Persons* v. *McKibben*, 5 Ind. R. 261.—Byles on Bills, p. 71.—Story on Prom. Notes, p. 27, s. 24.

"When a person enters for a condition broken, the estate becomes void *ab initio*, the person who enters is again seized of his original estate, in the same manner as if he had never conveyed it away." 1 Greenl. Cruise, tit. 13, p. 44. "If the condition has been performed in part, by the payment of money, and the grantor enters for breach of the residue, whatever was previously paid he may retain, but he cannot demand further performance after taking back the land." *Frost* v. *Frost*, 2 Fairf. 235. And see *Cross* v. *Carson*, 8 Blackf. 138; *Stone* v. *Huxford*, *id.* 452; *Hefner* v. *Yount*, *id.* 455; *Leach* v. *Leach*, 4 Ind. R. 628.

To entitle the plaintiff to a verdict, the failure to obtain which is the sole error he assigns, he must establish several positions. He must satisfy the Court that the deed on which he relies has been lost or destroyed, and that he has, without avail, used all proper and necessary diligence in searching for it. To this effect his affidavit was filed, couched in general terms, as will be seen by reference to it; and it is submitted to the Court if the description of the deed in that affidavit is sufficient as required by this Court in *Hoddy* v. *Hoard*, 2 Ind. R. 474, or is within the rule laid down by the Supreme Court of the *U. S.* in *Minor* v. *Tillotson*, 7 Pet. 101.

In *Renner* v. *The Bank of Columbia* (9 Wheat. 597), the Court, in relation to the admission of secondary evidence of the contents of a lost paper, say: "Every case of this kind must depend in a great measure on its own circumstances. This rule of evidence must be so applied as to promote the ends of

justice and guard against fraud and imposition. If the circumstances will justify a well grounded belief, that the original paper is kept back by design, no secondary evidence ought to be admitted; but when no such suspicion attaches, and the paper is of that description that no doubt can arise as to the proof of its contents, there can be no danger in admitting the secondary evidence. * * * Proof of the contents of a lost paper, ought to be the best the party has in his power to produce, and at all events, such as to leave no reasonable doubt, as to the substantial parts of the paper." In the case of *Sizer* v. *Burt*, 4 Denio, 429, where a witness was offered to prove certain extracts from papers lost or destroyed, with the whole contents of the originals of which the witness was familiar, having read them, and could give a general account of them, the Court, in admitting the testimony, say: "The plaintiff was at liberty to give secondary evidence of the contents of the paper; but he was bound to furnish reasonable proof of the entire contents, and could not be allowed to prove a part and stop there." As a case strongly and singularly in point with the present, both as to the facts and nature of the evidence, the Court is referred to *Metcalf* v. *Van Benthuysen*, 3 Comst. 421, in the course of which, at p. 428, is the following: "Secondary evidence of this character is admitted from necessity. But where the lost deed should accompany the possession and ownership of the land, as an essential muniment of the title, no necessity will dispense with the proof by parol of the contents, or substance of the contents of the operative parts of the instrument."

In the case of *Tayloe* v. *Riggs*, 1 Pet. 591, it is said by Ch. J. MARSHALL, at p. 600, that "when a written contract is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection of its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in Court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself." To the same point, and in language everywhere equally strong, are the cases of *Hampton* v. *Windham*, 2 Root, 199; *Griffith* v. *Huston*, 7 J. J. Marsh. 386; *Fitch* v. *Bogue*, 19 Conn. R. 285; *Calvert's* heirs v. *Nichols's* heirs, 8 B. Mon. 266, 270; *Grant* v. *Grant*, 1 Sandf. Ch. R. 239. In *The United States* v. *Britton*, 2 Mason, C. C. R. 465, the language of the Court is—"If neither the original nor a copy of the instrument can be found, the contents may be proved by parol evidence, by witnesses who have seen and read it, and can speak pointedly and clearly to its tenor and contents." A verdict for the appellant upon the evidence adduced by him in relation to the deed, would have been in direct violation of the rules of law connected with this point, which are so well and clearly laid down by this Court in the case of *Barickman* v. *Kuykendall*, 6 Blackf. 22.

It is said in 2 Sug. on Vend. p. 563, s. 77, that "a witness, in practice, is not privy to the contents of a deed." In 1 Greenl. Cruise's Dig. tit. 15, p. 205, s. 27, the same language precisely is used, as also these words in reference to fraud by witnessing an instrument: "A witness is only to authenticate it, and not to be privy to its contents."

In 1 Shep. Touchstone, p. 73, s. 9, it is said—"Although one claim but parcel of the original estate, yet in this case he must show the original deed to the Court; and the reason of this is to the end that the legal part of the deed

(the trial whereof belongeth to the judges) may approve itself; *i. e.*, that it may be seen whether the composition of words be sufficient in law or not; and then that it may appear whether the estate be with condition, limitation, or with power of revocation, &c., to the end that, if there be any such thing in it, and there be no other part of it, the other party may take advantage of it; and then that it may appear to be without rasure or interlining and the like; and also that it may appear to be well sealed and delivered; the trial whereof doth now belong to the country." It is believed, that in no instance of an attempt to establish a lost deed, since the law was thus laid down, can a case be shown which is supported by the Courts, upon proof of the contents less definite and explicit than are thus given in the Touchstone, as the essentials for determining both the character and the validity of the deed.

"The presumption against the spoliators of documents, is not confined to assuming those documents to be of a nature hostile to the spoliator, and procuring a more favorable reception for the evidence of his opponent; but it is said to cast suspicion on all the other evidence adduced by the party guilty of the malpractice. *Qui semel est malus, semper præsumitur esse malus in eodem genere.*" Best on Presumptions (vol. 47 Law Library), p. 129, s. 147. To the same effect, in Gresley's Eq. Ev. p. 274, it is said—"And if there is any proof that he has destroyed the instrument, every point will be stretched against him *in odium spoliatoris.*"

In 1 Smith's Leading Cases, at p. 401, in the notes to the case of *Armory* v. *Delamirie*, which is always pointed to as one of the leading cases on this subject, the author says: "As to the third point decided in this case, it is an illustration of that favorite maxim of the law, *omnia præsumuntur contra spoliatorem;* which signifies that if a man by his own tortious act, withhold the evidence by which the nature of his case would be manifested, every presumption to his disadvantage will be adopted." It is, says the writer, "a favorite maxim of the law;" and such is the language of BEST, and every other author who treats on the subject.