STARNES ET AL. *v.* ALLEN.

[No. 17,851.   Filed Nov. 24, 1896.   Rehearing denied July 1, 1898.]

EVIDENCE.—*Weight Of.*—Where the question of the sufficiency of the evidence to establish a fact upon which the verdict is based is raised on appeal, the Supreme Court will consider such evidence as standing alone and uncontradicted.  *p. 113.*

SAME.—*Order of Admission.*—Where evidence is admitted out of order, without objection to the order of its introduction, the Supreme Court is bound to consider same.  *p. 113.*

SAME.—*Transcript of Record.*—A certified copy of an unauthorized record is not admissible in evidence.  *pp. 113, 114.*

SAME.—*Longhand Manuscript.—When Copied in Bill of Exceptions.*—Where the certificate of the clerk shows that the bill of exceptions has been copied into the transcript it is not necessary that the record show that the longhand manuscript of the evidence was filed in the clerk's office prior to its incorporation in the bill of exceptions.  *pp. 114, 115.*

SAME.—*Lost Deed.—Removal of Papers.*—In an action to quiet title to real estate involving the question as to who was the grantee in an unrecorded deed, evidence to the effect that witness saw defendant, shortly after the death of alleged grantee, go to decedent's private drawer and remove papers therefrom was improperly admitted in evidence where it was not shown that the deed in question was among the papers.  *pp. 115-119.*

From the Morgan Circuit Court.  *Reversed.*

*Oscar Matthews* and *East & Miller*, for appellants. *Duncan & Batman*, *Willis Hickam* and *John C. Robinson*, for appellee.

MCCABE, J.—The appellee, Elisha M. Allen, sued the appellants, Mary M. Starnes and Zibeon Starnes in the Monroe Circuit Court, to recover possession of 130 acres of land situate in Monroe county; and in another paragraph he sought to quiet his alleged title therein against the defendants.  In each paragraph he alleged that he was the owner in fee simple. The issues formed by an answer of general denial were tried in the Monroe Circuit Court, resulting in

a verdict and judgment for the defendants (the appellants). The plaintiff was awarded a new trial as of right, under the statute, and the venue of the cause was changed to Owen county, and afterwards from Owen to Morgan county, where another trial of the issues resulted in a verdict in favor of the plaintiff, who had judgment on the verdict, over defendants' motion for a new trial for cause alleged. The insufficiency of each paragraph of the complaint, and the action of the court in overruling appellants' motion for a new trial are assigned for error. The error assigned on the insufficiency of the complaint is expressly waived by the appellants' counsel in one of their briefs. Therefore the only error to be considered on this appeal is that assigned on the ruling denying a new trial.

The first ground urged in support of the motion for a new trial is that the evidence is not sufficient to support the verdict. And specially it is urged that the complaint declared upon a legal title, and at best, plaintiff only proved an equitable title. It appears from the undisputed evidence that on March 26, 1888, there lived in Monroe county, one David Allen and Mary M. Allen (now Mary M. Starnes), who were husband and wife. At that time David owned a farm of 600 acres, upon which they were then living, called the "Home Farm," and a farm of 296 acres, known as the "Pitts Farm," and another of 86 acres, known as the "Coffey Farm." His wife owned a farm of 112 acres, known as the "James Place," and another of 80 acres known as the "Copenhaver Land." Mary was a subsequent wife. David was then sixty-six years old, and hopelessly in debt, there being mortgages on his real estate amounting to $13,000. His personal property had been sold on execution, and there were still hanging over him unpaid judgments to the

amount of several thousand dollars.   On that day he purchased of the heirs of George B. Moore the 130 acres of land now in controversy, known as the "Moore Farm," for $15,000; $500 was paid down, and notes were executed for the balance of the purchase-money to the different ones of the Moore heirs, according to the respective interests of the different heirs, and such notes were signed by David Allen and Mary M. Allen.   The oral evidence tends to show that at the time of the purchase said David and Mary M. executed to the Moore heirs a mortgage on said farm to secure the payment of said notes.   The mortgage seems to have been lost.

The deed conveying the farm by the Moore heirs seems to have been taken to the recorder's office at Bloomington for record, but by whom it was taken the evidence is not agreed.   The deed was found to be defective in its description of a part of the land, and on the advice of the recorder, it was not recorded; but he wrote out another deed to be executed in its stead by the Moore heirs.   David and Mary went into possession of the farm at once, but failed to have the new deed executed, or the old one corrected and recorded.   They made lasting and valuable improvements on the farm,—to the house at a cost of $400, a new barn at a cost of $800, and crib and granary worth $250,—a part of the material coming from Mary's other lands.   They builded fences, grubbed the brush, and filled washed places on the land, and paid off the notes when they fell due. These notes were partially paid with money derived from proceeds from Mary's other lands.   They moved into the house on the Moore farm after it was improved.   They cultivated the land, and took all the crops and appropriated the same to their use and benefit from the time of the purchase until David's

death, which occurred June 5, 1894. And his widow, Mary M., married her codefendant, Zibeon Starnes, a hired man living in the family, in December following. The plaintiff, Elisha M. Allen, is a son of said David by a former marriage, and was married and living apart from his father at the time of the purchase of the Moore farm, and all the time it was occupied by David and Mary. Said plaintiff claims that in the original deed containing the defective description he was named as the sole grantee, though he admits he never saw it, and that it was never delivered to him. The defendants claimed that the original deed named David and Mary M. Allen, his wife, as joint grantees, and the evidence on behalf of the defendants strongly tends to prove that to be the fact; but that evidence was contradicted by evidence on behalf of the plaintiff. The person who negotiated the sale of the land for the Moore heirs (one McHenry, husband of one of the heirs) was dead. And the living Moore heirs who had signed the deed and testified in the case as witnesses, differed in their recollection as to whether David and Mary M. Allen were named in the deed as grantees, or Elisha M. Allen was named therein as such grantee. Some had it one way, and some the other. The turning point in the case must be, who was the grantee named in that deed? Plaintiff claims he had been on a trade for the land before his father was, and that his father requested him to allow the father to trade for the farm, as he could put in a lot of sawing and hay on the purchase price, and thus save some money, and they could settle the matter between themselves. The evidence tends to show the presence of Elisha M. on one of the settlements of purchase-money, and that he paid some money on the purchase-money notes at that time; his father David Allen also being present. The purchase-money

notes were all surrendered to David, when paid off, and they were produced on the trial. David paid all the taxes during the six years he occupied the land, and the receipts were put in evidence. During the six years that David and Mary occupied the land, up to just a short time before David's death, Elisha M. made no claim to the ownership of the land. When David was in his last sickness in the month of March, 1894, Elisha M. Allen procured a new deed to be drawn up, which was duly signed and acknowledged by the Moore heirs purporting to convey said farm to said Elisha M. Allen. This deed, it was claimed, was made as a mere correction of the original or first deed, wherein there was a defective description. This deed was introduced in evidence.

The plaintiff's evidence in chief is wholly silent as to who the grantee named in the first deed was, and hence it is contended by the appellants that the evidence is not sufficient to support the verdict. This contention is predicated on the idea that if the Moore heirs had already conveyed their title in the first deed, even though there was some defect in the description, it was incumbent on the plaintiff to show who the grantee in the first deed was, because, if it were a different person than the one named in the amendatory deed, then the latter conveyed no title; and the further idea that the second deed while David and Mary were in adverse possession, claiming to be the owners, would be void as to them. But as to the latter contention, it is sufficient to say that while the evidence strongly tends to show that David and Mary were named in the first deed as the joint grantees, and were claiming to own under such deed adversely to all the world, yet there is evidence sufficient if uncontradicted and standing alone, to prove that David had purchased the land for his son Elisha M., and was

Starnes *et al. v.* Allen.

occupying it subject to him. And if the evidence tending to prove that the first deed named Elisha M. as grantee is believed, as the jury had a right to believe it, then the last deed could not be void for being made by one out of possession to another, while the land was in the adverse possession of a third party. Under such circumstances, the possession of David and Mary M. would not be adverse.

As to the other contention, the plaintiff's evidence in rebuttal was amply sufficient, standing alone and uncontradicted, to establish that the plaintiff was named in the first deed as the sole grantee. And that is the way we must consider the evidence, as we cannot weigh it. We must determine whether the evidence in support of a proposition or fact, standing alone and uncontradicted, is legally sufficient to establish that fact. We do not mean to intimate that the evidence tending to prove that the plaintiff was named in the first deed as grantee was not evidence in chief, and was rebutting evidence. It seems to have been admitted without any question as to the order of its introduction, and hence we are bound to consider it. If the first deed named the plaintiff as grantee, then that established title in fee simple in him, especially if the second deed corrected the defect in the description in the first. The evidence fails to show what the defect in the description in the first deed was, further than it failed to include about ten acres of the land.

The next reason urged for a new trial is the refusal of the trial court to admit in evidence a certified transcript from the mortgage record by the recorder of Monroe county. This mortgage had not been acknowledged, though it had been recorded. It had no right to be recorded, and the statute expressly for-

bids the record, without an acknowledgment or a certified transcript thereof, to be admitted in evidence. Section 3372, Burns' R. S. 1894, 2952, R. S. 1881; *Westerman* v. *Foster*, 57 Ind. 408. Counsel seem to suppose that because the mortgage debt had been paid off, and that the object of the proposed evidence was not to establish or rely on the continued legal force of the mortgage, but to give it in evidence as a circumstance tending to show that the first deed must have named the mortgagors, David and Mary M. Allen, as grantees, made it immaterial whether the mortgage was acknowledged or not. That is true. It was immaterial, had the original mortgage been offered in evidence. But the question here was, not the effect of the mortgage without acknowledgment, but the question was, how can the existence and contents of the mortgage be proved? The attempt here was made to prove it by a certified transcript from an unauthorized record. The statute simply authorizes a duly recorded instrument, or a certified copy thereof, to be used in evidence, and forbids the use of such record or copy in evidence when recorded without acknowledgment. Section 3372 (2952), *supra.* If the original mortgage was lost, as it seems to have been, secondary evidence of its contents might have been introduced. There was no offer of such secondary evidence of its contents. Besides, there was oral evidence introduced generally by the defendants to the effect that such a mortgage had been executed by David and Mary M. Allen to the Moore heirs to secure the payment of the purchase-money notes. There was no error in excluding the certified copy of the record of the mortgage. It is true, a duly proved copy would have been more effective under the circumstances than mere oral evidence of its contents.

The next ground of the motion for a new trial

urged is the act of the court in overruling the defend-
ants' objection to certain testimony of the witness S.
J. Johnson on behalf of the plaintiff.   The only an-
swer to appellants' argument in support of this objec-
tion which appellee's counsel make is that the evi-
dence is not in the record, and hence this objection
cannot be considered.   The ground for this conten-
tion is, as appellee claims, that there is no showing
in the transcript that the longhand manuscript of the
evidence was filed in the clerk's office before it was
incorporated in the bill of exceptions.   But the fact is,
the clerk certifies in the transcript that such long-
hand manuscript was filed in his office by the de-
fendants on the 25th day of January, 1896.   And in
another place in the transcript the clerk certifies that
on the 25th day of January, 1896, the defendants filed
in his office their bill of exceptions, containing what
purports to be the longhand manuscript of the evi-
dence.    But the clerk's final certificate to the tran-
script states that:   "I   *   *   *   do hereby certify
that the above and foregoing is a full, true, and cor-
rect copy of the records and judgment of the court
in the above entitled cause, as the same appears of
record in my office."   This statement is binding on us
until the contrary appears, and the contrary does not
appear.   And according to that statement the long-
hand manuscript has been copied into the bill and
the transcript, in which case it is wholly unimportant
whether the longhand manuscript of the evidence
was filed in the clerk's office before its incorporation
in the bill of exceptions.   We hold the evidence is
properly in the record.

After the loss of the first deed had been estab-
lished, and the plaintiff was engaged in introducing
evidence tending to prove that he was named in it as
grantee, it had been proved that the witness S. J.

Johnson was at the house of David Allen, engaged in painting his house, and boarding with him, and that the defendant Zibeon Starnes was also there as a hired hand, boarding in the family, and that said David was then on his deathbed, and that he died at about 11:20 o'clock in the night. It had also been shown that said witness, Johnson, had been called up from his bed just as the old man died, and that he came into the room where he had died, and that among others present was the defendant Zibeon Starnes. The court having sustained an objection to a certain question to said witness Johnson as to search for papers immediately after the death of said David, thereupon counsel for plaintiff stated to the court, in the hearing of the jury: "We propose to show a search of drawers, and a search for and gathering up of papers, and to show what they did there. The very deed they have said and proved in this case was lost, was in the very table drawer where this search was made for papers, and carried off by one of these defendants. We propose to show that this drawer was taken out, and the papers searched, and that papers the size and form of deeds was taken out and put in their pockets."

Thereupon the court overruled the objection, and the defendants excepted. The objection was that the proposed testimony was not material to any issue, unless the plaintiff proposed to show that the lost deed was among the papers about which they proposed to inquire. The witness Johnson then answered the question as follows: "I was sitting within three or four feet of the stand drawer. He (Zibeon Starnes) came to the stand drawers, and took out some several papers,—seemed to be soiled papers,—and put some in his pockets, and a little valise there was in the wardrobe. What they were I do not know.   *   *

Q. What time was that? A. About 12 o'clock, —within an hour after he died. * * * * Q. What form were the papers in? A. They were sorted out. Different forms, some were folded and some were long. They seemed to be in different shapes. Q. How were the papers as to this (indicating)? A. They seemed to be about that length. Q. That is, the length of a folded deed or mortgage? A. About that length. Q. How many papers did he take out and put in his pockets? A. Five, six, or eight. He seemed to be in a hurry sorting them out. Q. Was he in a hurry about it? A. Yes, a little bit of a hurry. Q. Did he look through the papers, or did he stop to read any of them? A. He would look over them. Some he put in his inside pocket, and others he put in the valise. Q. What, if any thing, did he put back in the drawer when he was done? A. I think he took about all there was in the drawer, is my recollection. There was quite a number in the drawer. Q. Was there any other stand in the room? A. That was all I saw. Q. In what room was this? A. In the room in which Mr. Allen died,—not more than five or six feet from where he died." There was no attempt to show that the deed in question was among these papers. There was no evidence to prove that the lost deed was ever in the drawer.

The whole of this evidence was therefore wholly immaterial, and irrelevant to any issue in the case. The loss of the deed had already been established so as to admit secondary evidence of its contents. The only possible relevancy the testimony could have had, if the missing deed had been shown to have been among the abstracted papers, would have been the inference that it contained the name of the plaintiff as grantee, instead of that of David Allen and Mary Allen, as the defendants claimed it did. This infer-

ence may arise against a party who destroys or suppresses evidence, namely, that such evidence if produced, would be against him. *Thompson* v. *Thompson,* 9 Ind. 323, 68 Am. Dec. 638; *Doty* v. *State,* 7 Blackf. 427; *Doan* v. *State,* 26 Ind. 495. But, without any evidence whatever that the last deed was in the place from whence the abstracted papers were taken, made it wholly irrelevant. The admission of the evidence was a judicial declaration to the jury that they were expected to consider that irrelevant evidence, and roam at large in their imagination in giving whatever force to that evidence that they might imagine proper. And, before they could use the testimony for any purpose whatever, they must first infer or presume the very fact in dispute, namely, that the missing deed was among the abstracted papers, and then upon that they must base the inference or presumption that the deed must have been against Zibeon's wife, or he would not have suppressed it. Without drawing this inference upon an inference, the jury could not use or consider the evidence at all. And yet its admission was a warrant to them to consider it in that way.

In view of the strong countervailing evidence as to who was named in the first deed as grantee, this evidence may have had a very damaging effect on the defendants' cause before the jury. Though it proved nothing at all against the defendants legally, and was therefore irrelevant and immaterial, yet such evidence has been held sufficient to reverse, because it may have had a potent influence in producing the verdict, especially where, as here, there is nothing to show that it proved harmless. *Hessin* v. *Heck,* 88 Ind. 449. Besides, the evidence objected to had a tendency to mislead the jury, and for that reason ought to have been rejected. *Orr* v. *Miller,* 98 Ind. 436. The circuit

court erred in overruling the motion for a new trial. The judgment is reversed, with instructions to grant the defendants a new trial.

### ON PETITION FOR REHEARING.

McCABE, J.—A petition for a rehearing is presented in this case, supported by an exhaustive brief of over forty pages of printed matter. We have read and considered it with patience and forbearance. The first twenty pages are devoted to a profound, logical and able argument, couched in language ornate and dignified, supported by the citation of many recent decisions of this court to the effect that when the longhand manuscript of the evidence is sent up to this court, the transcript must show that it was filed in the clerk's office before it was incorporated in the bill of exceptions, or the evidence is not in the record. And, it not being shown that the longhand manuscript was filed in the clerk's office in this case before the bill of expections was filed, it is contended, in a liberal display of charming rhetoric, that we erred in holding that the evidence was in the record. If we had decided in the original opinion that it need not be shown in the transcript that the longhand manuscript was filed before its incorporation in the bill of exceptions, in opposition to the long line of cases decided by us, cited by appellee's counsel, it would not tax our patience to read this long argument to prove a proposition which no one disputes. The original opinion makes no such decision, but is in perfect accord with all those cases holding that, in order to bring the evidence into the record by the original longhand manuscript sent up to this court, the transcript must show that such manuscript was filed in the clerk's office below before its incorporation in the bill of exceptions, as required by the statute in

force when these proceedings took place. Therefore, all this long effusion about our duty to be governed by our previous decisions as to what is required to make the original longhand manuscript, when sent up, a part of the record, is nothing less than an inexcusable waste of labor and valuable time, or "love's labor lost." But it may be counsel intended such useless argument as a sort of a makeweight in favor of the appellee on another proposition that is involved. Each proposition, however, must stand or fall on its own merits. The sole ground on which we held that the evidence was in the record is that the clerk had, in his certificate authenticating the transcript, said: "I * * do hereby certify that the above and foregoing is a full, true, and correct copy of the records and judgment of the court in the above entitled cause, as the same appears of record in my office."

Two things are said in this certificate vital to the controversy; one is that what precedes it is a copy or a transcript of the original, and the other is that the original of all contained in the transcript remains and appears of record in the clerk's office below. That could not be so if the original manuscript of the evidence had been sent up here. We simply held in the original opinion that this statement of the clerk below, within his power to make, was binding on us, in the absence of any showing to the contrary appearing in the record; holding that that made it appear that the bill of exceptions, including the longhand manuscript, had been copied by the clerk into the transcript, making it wholly immaterial whether the longhand manuscript had ever been filed in the clerk's office, separate and apart from the bill of exceptions, or not. And it is not now contended that the record shows anything to the contrary. It is conceded that the transcript properly shows the filing of the bill of

exceptions in time. It is, however, contended by appellee's learned counsel that even in that case the transcript must show the filing of the original longhand manuscript in the clerk's office before its incorporation in the bill of exceptions. But that is a total misapprehension of the force and effect of the statute then in force, providing for sending up the original longhand manuscript of the evidence without copying it, instead of a transcript thereof. It is only when that is to be done that there was any requirement that it should be filed in the clerk's office. That statute, neither repealed nor modified the other provisions of the code as to incorporating the evidence in a bill of exceptions, and copying the same into the transcript. When that course was pursued all that these provisions required was that the transcript should show the filing of the bill of exceptions, incorporating the evidence, within the proper time, in the clerk's office below. Appellee's counsel assume that this is not the law; citing in support of such assumption the line of decisions already referred to, as to the requisites to bring the evidence into the record under the statute then in force as to bringing up the original longhand manuscript. But such decisions have no bearing on the question. Where the clerk's certificate shows, as is the case here, that the bill of exceptions has been copied into the transcript, this court has steadily recognized the law to be as we declared it in the original opinion (that it is not necessary to show anything about the filing of the original longhand manuscript in the clerk's office), in the following cases: *Holt* v. *Rockhill*, 143 Ind. 530, 533; *Morrison* v. *Morrison*, 144 Ind. 379; *Hamrick* v. *Loring*, 147 Ind. 229, 231. And in *Madden* v. *State*, 148 Ind., at pp. 184-185, the question was directly decided in the following words: "Where the transcript does not purport to

contain the original longhand manuscript, but where the bill, as here, states that it contains all the evidence given in the cause, there is no reason why such transcript should show that the longhand manuscript of the evidence and its incidents was ever filed in the clerk's office. It is sufficient if the judge certifies as he has here that the bill of exceptions contains all the evidence given in the cause, and the clerk certifies as he has here 'that the above and foregoing transcript contains complete copies of all the papers and entries in said cause,' the transcript otherwise showing the filing of the bill of exceptions in said cause."

But if we are wrong in holding the evidence is in the record, aside from this, our attention is called to the fact by appellants' counsel that there is a special bill of exceptions in the record, about the validity of which there is no question, and none can be made, and which is wholly ignored by appellee's learned counsel, more fully and completely exhibiting the ruling of the court overruling appellants' objection and exception to the admission of the evidence for which we reversed the judgment in the original opinion.

It is contended that there was no specific objection stated to the introduction of the evidence for which we reversed the judgment. The objection stated in the bill of exceptions containing the evidence is as follows: "Counsel for defendants objected to this question as being immaterial to any issue in this case." And again, the objection was stated when the same question was repeated: "Counsel for defendants objected to this question,—incompetent, and immaterial to any issue in the case." There is some confusion in the bill containing the evidence as to what specific objection was made and ruled on. But the special bill reads thus: "To the introduction of which evidence

the defendants at the time objected, for the reason that it was incompetent to show that within a few minutes after the death of David Allen, there was a search for papers, in the absence of any showing that the orig inal deed had ever been in said stand or drawer, or was in there at the time of the death of the said David Allen, and in the absence of any showing that David Allen was in possession of said deed at the time of his death, or that said Zibeon took said deed from said drawer. That the court overruled said objection, and permitted the witness to testify to said facts (which are set out in said special bill), to which ruling of the court the defendant at the time excepted." This objection fully sets forth the objections to said testimony, for overruling which we reversed the judgment in the original opinion. And the above quotation answers the point made, that no proper exception was taken to the ruling. The exception, as shown in the bill containing the evidence, was not as apt and perfect as could have been made, but the above exception is not open to any valid objection.

To the last point made, that the evidence was competent, and that we erred in holding it incompetent, we must say counsel have made no new or valid answer to our reasons stated in the original opinion, why it was incompetent, and its admission was harmful to the appellants. The petition is overruled.