CAMPBELL *v.* BRACKENRIDGE and Others.

8b 471
129 365
8b 471
142 587
8b 471
144 109

Where a material allegation in a bill in chancery is denied by the answer it must be proved.

If at the time of *A.*'s assignment of an agreement for the purchase by him of real estate, the premises are occupied by a third person, such occupancy is constructive notice to the assignee of the occupant's title.

But if the possession is vacant, the assignee need not inquire of the late occupier what was the nature of his title, and will not be held to have implied notice of the information which he might have obtained by inquiry.

A person who purchases an equitable title without notice of a prior equity, and afterwards, with notice, buys in a legal title to support his equitable one, will be protected.

Although an assignment by *A.* to *B.* of an agreement be objectionable on account of *A.*'s intoxication when he executed it, the objection will not affect *B.*'s subsequent assignment of the agreement to *C.* without notice.

An agreement made by county commissioners, not at a regular session of the board but in vacation, is not binding on the county.

SMITH, J.—This case was commenced in the *Allen* Circuit Court, from whence it was certified here in consequence of the president judge of that Court having been engaged as counsel for one of the parties. It stands, therefore, as an original case, and has been submitted upon bills, answers, replications, and depositions. The facts established, so far as they are necessary to be stated, are substantially as follows:

In the year 1830, the congress of the *United States* passed an act authorizing the associate judges of the county of *Allen* to enter, for the use and benefit of said county, so much of the "forty-acre reservation" reserved for the use of the Indian agency established at *Fort Wayne*, as might not fall to the state of *Indiana* under the act of 1827, granting certain lands to the state for the purpose of aiding in the construction of the *Wabash* and *Erie* canal. The land was accordingly

entered by the associate judges and paid for with the funds of the county. It was then taken possession of by the board of county commissioners, who caused it to be laid off into town-lots. In *October*, 1830, a number of the lots were sold at public auction by the county agent, by order of the board of commissioners, the associate judges claiming no interest, the entry having been made by them for the sole and exclusive use of the county.

On the 17th of *January*, 1832, *Nathan Coleman*, *Francis Alexander*, and *James Holman*, being the county commissioners of *Allen* county and describing themselves as such, but in vacation and not at a regular session of the board, entered into an agreement in writing with one *Leonard Coquillard*, by which they sold to *Coquillard* lots Nos. 35 and 36, being part of the tract of land above described, for 400 dollars, to be paid in plastering the court-house at *Fort Wayne* in a good, workmanlike manner, when called upon, at such price as any other person would do the same for, *Coquillard* to pay the difference in money if the plastering did not come to as much as the price of the lots. This agreement was signed, and sealed by the parties with their individual seals. The board, at that time, had no county or official seal. On the 8th of *August*, 1832, this contract was assigned by *Coquillard*, by indorsement thereon, to *Nathaniel B. Bowen*, the latter, as the assignment specifies, to have all the rights, interests, and claims of *Coquillard*, and to assume all his liabilities to the county commissioners. This assignment is tested by the signatures of *D. H. Colerick* and *W. G. Campbell*, the complainant. On the 6th of *December*, 1832, *Bowen* assigned this instrument upon the same terms, by indorsement, to *Elisha B. Harris*, and on the 2d of *March*, 1833, *Harris* assigned it to *Robert Brackenridge*. These are all the assignments indorsed upon the contract made by the commissioners with *Coquillard*.

Before the indorsement to *Bowen*, however, *Coquillard* made an agreement with *Campbell*, the complainant, also in writing, by which he sold *Campbell* his right to lot No. 36, in consideration of the latter building him a house of the value of 200 dollars on lot No. 35. *Campbell* took possession of lot No. 36, and built a small house upon it of the value of

about 100 or 150 dollars, into which he moved his family. He also built a house upon lot No. 35 estimated to be worth 178 dollars and 86 cents. He was at work upon the house on lot No. 35 in *July, August*, and *October*, 1832. He moved into the house on lot No. 36 on the 17th of *October*, 1832, and lived there two or three months. The agreement between *Coquillard* and *Campbell* is alleged to be in the possession of some of the defendants or to be lost or destroyed. It was not produced. On the 3d of *September*, 1832, *Bowen* and *Campbell* made an agreement in writing, by which the former assigned to the latter all his right to a frame house then building on lot No. 35, as security for the carpenter work and materials expended in its construction, until *Bowen* should make *Campbell* a deed in fee-simple for lot No. 36. The complainant alleges in his bill, that the assignment to *Bowen* by *Coquillard* was made subject to the contract previously made by the latter with the complainant, of which *Bowen* had notice, and this agreement between *Campbell* and *Bowen* appears to have been made with the view of carrying out the previous agreement with *Coquillard*.

Soon after *Coquillard's* agreement had been assigned to *Brackenridge*, at the *March* session of the board doing county business, the latter surrendered it up to be cancelled, and the board then made an order directing the county agent to execute to *Brackenridge* a title-bond for the lots Nos. 35 and 36, on his giving proper vouchers for the payment of the purchase-money, 400 dollars. Such a title-bond was accordingly made; and a receipt indorsed upon it, signed by the county agent, shows that the purchase-money was fully paid by *Brackenridge*.

No request was ever made to *Coquillard* or his assignees to do the plastering of the court-house, and no such plastering was done. *Brackenridge*, after the assignment to him, took possession of the lots and made improvements to the value of about 4,000 dollars. The improvements were made during the years 1833, 1834, 1835, and 1837. The original bill of complaint in this suit was filed by the complainant on the 11th of *April*, 1833.

These are the leading features of the case. Some other facts in evidence will be noticed in the consideration of the

questions that arise. One of the first and most important of these, supposing for the present that the contract made by the county commissioners with *Coquillard* was valid and binding upon the county as a sale of the lots in question to *Coquillard* and his assigns, is whether *Harris* and *Brackenridge* had notice, at the time of the respective assignments to them, of the prior sale and contracts of *Coquillard* and *Bowen* to and with the complainant. *Brackenridge*, in his answer, expressly denies such notice, and therefore it is necessary that fact should be established by the complainant before he can be entitled to a decree against the former. If *Brackenridge* took the assignment from *Harris* without notice of the prior equity of *Campbell*, he holds as an innocent purchaser having equal equities with the complainant, and a Court of Chancery cannot interfere between them.

It is contended by the counsel for the complainant, that both *Harris* and *Brackenridge* were affected with constructive notice by the fact that *Campbell* was in the possession and occupancy of the premises at the time of the assignments to them. This position would be correct if it was sustained by the facts. But such is not the case. It is proved by one witness, that *Campbell* moved into the house on lot No. 36 in *October*, 1832, and lived there two or three months; but it is stated by *Colerick*, who wrote the assignment to *Harris*, that before the date of that assignment (6th *December*, 1832,) *Campbell* had removed from the county, and by two or three witnesses that, at the date of the assignment to *Brackenridge*, both the lots were uninclosed and that neither of them was occupied by any person. It is true, there is a written lease of the lot No. 36, purporting to have been granted by *Campbell* to one *Hedges*, and proved to have been in the handwriting of *Hedges*, which is dated the 16th of *May*, 1833, and a witness deposes on the 23d of *September*, 1833, that *Hedges* was then, and had been for some months then last past, living in the house on that lot; but this evidence does not contradict the proof that, at the date of the assignment to *Brackenridge* (2d of *March*), the premises were vacant. It is not proved then that *Campbell*, or a tenant holding under him, was occupying the lots or either of them at the time of the assignment to *Brackenridge*, and a

purchaser, when the possession is vacant, is not bound to inquire of the late occupier what was the nature of his title, and will not be held to have implied notice of the information which he might have obtained by inquiry. *Johnston* v. *Glancy*, 4 Blackf. 94, and note.

It is also contended that *Brackenridge* had express notice of the claim of *Campbell*, at the time the former presented the original agreement with *Coquillard*, after he had procured it by assignment from *Harris*, to the county board at its *March* session to be cancelled. One witness, *Noel*, states that when *Brackenridge* so presented the agreement, he (the witness) stated to the board that it was well known that *Campbell* had a claim on the lots and had made improvements on them, but he does not expressly say that this information was given in the presence and hearing of *Brackenridge*. No other witness testifies to notice having been given at that time, and this imperfect evidence of one witness is not sufficient to overcome the positive denial of the answer. But it is averred that *Brackenridge* had full notice of the whole equity of the complainant by the original bill in this suit, which was filed before the former had paid the whole amount of the purchase-money to the county agent and received his deed. The complainant, however, is equally in error in relying upon this point, and on the effect of notice given at the time of the surrender of the original agreement to the county board. It was then too late to affect *Brackenridge* with such notice. It should have been given prior to the completion of his contract with *Harris*, as it was by the assignment of the latter he obtained the interest to which the prior equity of the complainant was attached. After he had purchased the interest of *Harris*, he might purchase another or different right or interest with full notice of a prior equity without losing his character as an innocent purchaser. This principle is fully recognized in the case of a party who purchases an equitable title without notice of a prior equity, and afterwards, with notice, buys in a legal title in order to support his equitable title. In such cases the purchaser will be protected. 1 Story's Eq. 75. This, in fact, was what was done by *Brackenridge* after the agreement with *Coquillard* had been assigned to him.

We come to the conclusion, therefore, that it is not proved that *Brackenridge's* purchase of the interest of *Coquillard* was made with notice of the prior claim of the complainant. This point has been examined with some minuteness, because it is decisive of the question whether such relief can be granted as is prayed for by the bill. As there is no ground to consider *Brackenridge* as the holder of the legal title in trust for the complainant, he cannot be compelled by decree to convey the property in question to the latter.

It is in proof that *Bowen*, about the time of his assignment to *Harris*, was addicted to intemperate habits, and was intoxicated when the assignment was made. Counter evidence is also offered to prove that his agreement with *Campbell* was procured by fraudulent means; but we shall not further notice this testimony, because we do not deem that introduced by the complainant sufficient to justify the conclusion that the assignment to *Harris* was invalid for that reason, and if it was as against him that would not affect the rights of *Brackenridge*, unless notice of the fact of *Bowen's* incapacity at the time was brought home to him, which is not attempted.

The only remaining question to be considered is, whether the contract made by the commissioners with *Coquillard* was of such a nature as to be binding upon the board or upon the county. This may be disposed of briefly. In the case of *Archer* v. *The Board of Commissioners of Allen Co.*, 3 Blackf. 501, it was held that in a suit on a contract for work and labour, no act of the members of a board of county commissioners could render them liable in their character of commissioners, unless such act was done by them at a regular meeting of the board at the time fixed by law. Their powers are created and defined by the statutory laws of the state. They are, in fact, agents with strictly limited powers, and for any act done by them not within the scope of such powers, the county as a body politic or their successors in office are not responsible. The contract with *Coquillard* was not entered into by virtue of any order or act done at a regular meeting of the board, and for that reason must be regarded as creating no obligation or liability on the part of the commissioners except in their individual capacity.

*Per Curiam.*—The bill is dismissed with costs.

*H. Cooper* and *O. H. Smith*, for the complainant.

*R. Brackenridge, D. H. Colerick, W. H. Coombs, J. S. Newman*, and *W. W. Wick*, for the defendants.