OLIVER *v.* KEIGHTLEY, Auditor of *Putnam* County, and Others.

COUNTY BOARDS—SPECIAL SESSIONS.—*Semble,* that under the statute authorizing the County Auditor to call a special session of the Board of County Commissioners, "whenever the interests of the county demand it," the auditor must determine the necessity of such special session, and his action cannot be reviewed by the courts.

SAME.—The Auditor of *Putnam* county issued a call for a special session of the Board of County Commissioners "for the purpose of giving a bounty

to recruits to save the citizens of the county from a draft, and to make appropriations for the benefit of soldiers' families.

*Held,* that the objects stated were of interest to the county, and authorized the assembling of the county board in special session.

*Held,* also, that it is not necessary for the auditor to state in his call the objects of the special session, and if they are stated the board is not confined in their action to the consideration of the specified subjects.

BOUNTIES TO SOLDIERS—POWER OF COUNTY BOARDS.—The Board of Commissioners of *Putnam* County, in *January,* 1865, passed an order directing the auditor to issue to each person in the county who had paid money to relieve the men who were drafted under a late draft, or to relieve any township from the draft, a county order for the amount so paid out. It was further ordered that no more than $400 should be paid to any man who had put in a substitute, and that $400 should be paid to each drafted man who was mustered into the service, or to his wife and family in case of his death.

*Held,* that the order of the board was unauthorized at the time it was made, and that it was not made valid by the act of *March* 3, 1865.

APPEAL from the *Putnam* Circuit Court.

RAY, J.—The appellant instituted this proceeding to enjoin the appellees from issuing certain orders and bonds in accordance with a resolution of the Board of Commissioners of the County of *Putnam,* passed *January* 6th, 1865.

A demurrer filed to the complaint was sustained by the court, and the application was refused.

The appellant insists that the proceedings of the board of commissioners were void, because such action was had at a special session, and the members of the board had not been summoned as required by law.

The record shows the objection to be untrue. The notice required by statute (1 G. & H., § 1, 248,) to be given by the auditor of the county, to the members of the board, is set out in full in the record, and the acknowledgment of service thereof is attached thereto.

The next objection presented, is that such special sessions are only to be called "whenever the interests of the county demand it." It might be sufficient answer, perhaps, to say that the auditor is the person who must determine when the interests of the county require such meeting of the

board, and that the court will not review his action in a matter which the statute has committed alone to his judgment. But the summons recites, in terms, the objects of the meeting. The special session, it states, is called "for the purpose of giving a bounty to recruits, to save the citizens of the county from a draft on the 15th day of *February*, 1865; also, to provide for the re-payment to parties who have advanced money to procure recruits under the preceding drafts; also to make appropriations for the benefit of soldiers' families."

We have already held in the case of *Coffman* v. *Keightley, Auditor, &c., ante.,* p. 509, that the object first stated, was one of interest to the county. That the last purpose indicated in the recital is within the authorized objects is not disputed. The board was then called together for purposes in which the county was deeply interested. The statute provides that the board shall be summoned for any object in which the county is interested, but it does not, in terms, limit their action to that object, nor does it require the auditor to state, in any official form, the purpose for which they are convened. Were we then to hold, that the action of the board must be limited to those matters which, in the opinion of the auditor, "the interests of the county demand" they should consider, while the statute permits him to lock within his own breast all knowledge of the motives that prompt his action, we would simply make the validity of every order of the board at their special sessions to depend upon the uncertain memory of the officer empowered to summon them together. We do not think the legislature intended to rest the validity of such action on such a basis. It seems more reasonable to suppose, that when the board have been summoned together, as the law has not provided that the special object of their meeting should be stated, that they are to be intrusted, rather than the auditor, with the power to determine the subjects which the interests of the county demand they should consider.

The board of commissioners having then been legally notified to meet, under circumstances expressly authorized by statute, this question only remains for determination: Was their action upon the matters considered by them authorized by law, or has it been legalized by the action of the legislature?

The order, the legality of which has been denied, reads as follows:

"Ordered by the board, that the auditor of *Putnam* county issue to each of the persons in the several townships of said county who paid out money to relieve men drafted in said township, in the late draft, or for money paid out to relieve any of said townships from such draft, or the citizens thereof, and for drafted men, county orders for such sums so paid out, payable as follows: * * * It is hereby intended and ordered, that no greater sum than $400 shall be paid to any person who has furnished a substitute, no matter how much he may have paid; and $400 shall also be paid to each drafted man who was mustered into the *United States* service, or to his wife and family in case of his death, when the drafted man did not receive any local bounty."

It is admitted that at the date the action was had by the commissioners, no law authorized such proceedings. It was held, in the case of *Booth et al.* v. *The Town of Woodbury,* by the Supreme Court of *Connecticut,* Law Reporter, vol. 27, No. 4, p. 232, "That in the absence of authority so conferred, a town has no power to appropriate money for gratuities to men drafted for the military service of the *United States.*" "Towns, like other corporations, can exercise no powers except such as are expressly granted to them, or such as are necessary to enable them to discharge their duties and carry into effect the objects and purposes of their creation." *Abendroth* v. *Greenwich,* 29 Conn. 363. "They act, not by any inherent right of legislation, like the legislature of the state, but their authority is delegated." 8 Conn. 254.

The legislature, however, at its forty-third session, passed "an act to legalize the issuing of bonds, and making appropriations, and the levy and assessment for taxes in certain cases, and making it unlawful, after the quota of the state on the present call is filled, for boards of county commissioners, or the municipal authorities of incorporated towns and cities, to pay any money out of their treasuries or to issue any bonds, orders or evidences of indebtedness, to give bounties to volunteers, drafted men or substitutes." This act was approved March 3d, 1865.

The first section of the law provides, "That all bonds or orders heretofore issued, or appropriations made, by and under the authority of the boards of commissioners of the several counties of this state, and the incorporated cities and towns thereof, for the purpose of procuring or furnishing volunteers and drafted men for the army and navy of the *United States*, or for maintaining the families of volunteers, soldiers, substitutes or drafted men, or otherwise to aid the government in suppressing the rebellion, be and the same are hereby ratified, affirmed, and legalized."

The order made by the Board of Commissioners of *Putnam* county was clearly not "for the purpose of *furnishing* volunteers and drafted men for the army and navy of the *United States*," nor for the purpose of "maintaining their families." Was it then passed "to aid the government in suppressing the rebellion"? We can readily understand how the payment of a bounty to volunteers, thereby inducing men to enter promptly into the military service of the government, and thus increase the strength and power of her armies in the field, at an earlier date and at less expense than could be accomplished by a draft, would "aid the government."

But no aid was afforded to the government in suppressing the rebellion by the *re-payment* to individuals of the money they had expended to relieve the men drafted, or the citizens or townships from the draft. The original expenditure of the money may have accomplished that

result, but upon its *re-payment*, the existence of the rebellion did not perceptibly depend. The payment of $400 to men drafted under the former call for troops, when the men were already mustered into the army of the *United States*, and were then rendering most efficient aid to the government in suppressing the rebellion, clearly does not come within the intent or the letter of the statute. The Supreme Court of *Massachusetts*, in the case of *Fowler et al.* v. *Select-men, &c., of Danvers*, 8 Allen, 80., held that it was not an act in "aid of the war, to give increased compensation to those who are already enlisted, and whose services as soldiers are already pledged to the government."

The second section of the act declares valid any levy and assessment of taxes, for the purposes enumerated in the foregoing section. It contains also this proviso: "That the provisions of this act shall not be construed to cover or include debts contracted by individuals to relieve themselves from any draft that has heretofore taken place, nor shall the same be construed to authorize the assumption or payment of such debts by any county, town or city; but the provisions of this act are intended to apply to the action of counties, towns and cities which have acted through their legally constituted authorities, and have issued their bonds, orders, or other evidences of indebtedness, to raise money to pay bounties to volunteers, and drafted men, who have entered the military service of the *United States*, or to maintain and support the families of volunteers, drafted men and substitutes."

It is urged that as the proviso declares that the act shall not be construed to authorize appropriations to "cover or include debts contracted by individuals, to relieve *themselves* from any draft," that thereby it admits, that by proper construction all debts contracted by individuals to relieve *others* from such draft are within its provisions. But the argument, false in itself, is utterly destroyed by the clause following, declaratory of the purposes of the statute, and limiting its benefits "to counties, towns and cities, which

have acted through their legally constituted authorities," thereby absolutely excluding all claims of persons who have acted in their individual capacity.

We conclude, therefore, that the action of the board of county commissioners was unauthorized at the date of its occurrence, and that it has not since been legalized by the law-making power. It is therefore void.

The judgment is reversed and the cause remanded, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion. Costs against appellees.

*Williamson & Daggy,* for appellant.

*J. A. Matson,* for appellees.