## King, Treasurer of Fountain County, and Others v. Course and Others.

BOUNTIES TO VOLUNTEERS.—In *October,* 1864, the board of commissioners of *Fountain* county made an appropriation of $220,000, to defray the expenses of raising, by enlistment, four hundred and twenty-eight men to fill the quota of the county under the call of the President for five hundred thousand men.

*Held,* that the appropriation was made valid by the act of *March* 3, 1865.

*Held,* also, that the fact that some townships of the county had already filled their quotas, did not take the appropriation out of the operation of the act referred to.

PUBLICATION OF LAWS.—A final judgment enjoining the county auditor from issuing the warrants provided for in the order of the board was rendered in the court below *March* 4, 1865. The act legalizing such appropriations was approved by the Governor *March* 3, 1865, and went into force from and after its passage, and publication in certain daily newspapers. The publication was made *March* 4.

*Held,* that the legalizing act went beyond the judgment, and made the appropriation legal *ab initio,* and thereby rendered the judgment erroneous.

APPEAL from the *Fountain* Circuit Court.

ELLIOTT, J.—This was a complaint filed by the appellees to enjoin the auditor of the county of *Fountain* from issuing, and the treasurer from paying, certain orders authorized and directed by the board of commissioners of said

county, to defray the expenses of raising, by enlistment, four companies of one hundred and seven men each, or their equivalent, to fill the quota of said county under the call of the President of the *United States*, in 1864, for 500,000 men. The appellants demurred to the complaint, because it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, and afterward granted a final and perpetual injunction, according to the prayer of the complaint. The ruling of the court on the demurrer raises the questions presented in the case.

The orders of the board of commissioners complained of were made on the 1st of *October*, 1864, and are as follows:

"Ordered, that there be and hereby is appropriated out of the county treasury the sum of $220,000, to defray the expenses of raising, by enlistment, four companies of volunteers, of 107 men each, or their equivalent, to fill the quota of *Fountain* county under the late call of the President for 500,000 men.

"Ordered, that the county treasurer be and he is hereby authorized and directed to solicit capitalists, and others interested, to make advances to the county for the purpose of creating a fund to enable the county to carry into effect the foregoing order of this board, appropriating funds from the county for the expenses of enlisting four companies of volunteers to fill the quota of *Fountain* county under the call of the President for 500,000 men. And for all sums so advanced, the county auditor is authorized and directed to draw his warrant on the county treasurer, in favor of the person making the advancement, payable on or before the 25th day of *March*, 1867, with legal interest from date.

"Ordered, that *Francis J. Glascock, Luther C. Slavens, Harris Reynolds, Harley Greenwood* and *James McManony*, be and they are hereby appointed agents for the county to superintend the enlistment of four companies of volunteers of 107 men each, or their equivalent, to fill the quota of *Fountain* county, under the call for 500,000 men. And they are hereby authorized to draw from the county treasury,

on the order of the county auditor, who is hereby authorized to issue the same, such sum or sums, not exceeding $220,000, as may be necessarily expended in the enlistment of said volunteers. Said agents first giving bond and security for the faithful application of the funds so drawn to the purposes designated herein. And it is further ordered that said agents make report of their proceedings to this board, on *Saturday*, the 15th day of *October*, 1864."

It is not claimed that 'the act of the legislature, at the special session of 1861, authorized the appropriation contemplated by these orders. But it is insisted by the appellants that the appropriation was legalized and rendered valid by the act of *March* 3d, 1865, which provides "that all bonds or orders heretofore issued, or appropriations made, by and under the authority of the boards of commissioners of the several counties of this State, and the incorporated cities and towns thereof, for the purpose of procuring or furnishing volunteers and drafted men for the army and navy of the *United States*, or for maintaining the families of volunteers, soldiers, substitutes or drafted men, or otherwise to aid the government in suppressing the rebellion, be and the same are hereby ratified, affirmed and legalized." Acts of 1865, p. 126.

Here, the object of the appropriation, as clearly expressed in the order, is to defray the expenses of raising four companies of enlisted men as volunteers for the army of the *United States*, to fill the quota of said county under the call of the President of the *United States* for 500,000 men, then pending and unfilled. The appropriation, therefore, is clearly within the provisions of the ratifying act of *March* 3d, 1865.

The decision of this cause has been unavoidably delayed, owing to the fact that very soon after its submission the record and papers were taken from the files in the office of the clerk by some unknown party and have not since been found, and a substituted record has but very recently been furnished. Since its submission, however, the cases

of *Coffman* v. *Keightley et al.*, 24 Ind. 509; *Oliver* v. *Keightley*, 24 Ind. 514, and *The Board of Commissioners of Miami, County* v. *Bearss*, ante. p. 110, growing out of similar appropriations, have been decided by this court, and in their decision many of the questions involved in this case were decided.

In *Coffman* v. *Keightley et al.*, the question of the constitutional power of the State legislature to authorize the county authorities to appropriate . money to aid in raising men, in obedience to the call of the President, for the army and navy of the *United States*, and thereby aid the government in suppressing the then existing rebellion, is discussed and decided affirmatively. And in all those cases the power of the legislature to ratify and legalize such. appropriations, previously made by the county commissioners, is clearly recognized. A further discussion of those questions is not, therefore, deemed necessary here.

It appears from the complaint that the quota of *Fountain* county, under the call of 1864 for 500,000 men, was equal to four companies of 107 men · each. And it is alleged that two of the townships of said county, whose aggregate quota was twenty-nine men, had furnished said quota by volunteer enlistments, and that in six out of the remaining .eight townships of said county, the number of men required of those townships had been drafted at the date of said appropriation and order. It does not clearly appear from the complaint that the twenty-nine men alleged to have been furnished by two of the townships by voluntary enlistments had been accepted and mustered into the service, or credited to those townships or to the county, though, perhaps, such an inference might be drawn from the allegation that they had been furnished. And in reference to the six townships in which it is averred the draft had already been made, the reasonable inference is that none of the persons drafted had been mustered into the service or credited to the quota of the county, while it is evident from the record that the object of the appropriation was to

furnish the whole number of men required to fill the quota of the county under the call of the President, and to provide bounties for all who entered the service under the call. We see nothing in these averments to justify us in holding that the appropriation is excluded from the provisions of the legalizing act of the legislature. The townships of the county, in their corporate capacities, had no power to levy taxes and raise funds for these purposes. The board of commissioners, in the exercise of their limited legislative power, act for the whole county. The necessities of the public service, in which all were deeply interested, required that the county should furnish a given number of men for the national defense, and even though a portion of the required number had been secured, we do not think that fact furnished any valid reason why the commissioners should not afford their aid to the government, in assisting to promptly raise the residue. It would certainly be, in the language of the act of 1865, "procuring or furnishing volunteers, or drafted men, for the army of the *United States*," and thereby aiding the government in suppressing the rebellion.

There is one other question presented by the record that is proper to be noticed. The final judgment in the cause was rendered by the Circuit Court on the 4th day of *March*, 1865. The legalizing act of the legislature referred to above, was approved by the Governor on the 3d day of *March*, 1865. It contains an emergency clause, and is declared to be in force from and after its passage and publication in the "*Indianapolis Daily Journal*" and "*Indianapolis State Sentinel*," and was published in those papers *March* 4, 1865. It is insisted by the appellee that the law was not in force until the day after its publication, to-wit: *March* 5, 1865, and that the judgment of the Circuit Court was therefore correct and valid at the time of its rendition, and could not be rendered void, or even erroneous, by a subsequent act of the legislature. The judgment was pronounced on the 4th of *March*, but did not take effect until it was

signed by the judge. The statute makes it "the duty of the clerk of the Circuit Court to draw up each day's proceedings at full length, and the same shall be publicly read in open court, after which they shall be signed by the judge," &c.

The record does not state on what date the judgment was so read and signed. In view of the usual practice in such cases, the reasonable inference is that the proceedings of the court of the 4th of *March*, were read in open court and signed on the morning of the judicial day next succeeding, and if so, the act of the 3d of *March* was in force at the time the judgment was so signed. But however this may be, we think the legalizing act goes beyond the judgment, and makes the appropriation and orders of the board of commissioners legal *ab initio*, and thereby renders the judgment and injunction of the Circuit Court erroneous. *Hepburn* v. *Curts*, 7 Watt's R. 300. See also, Sedgwick on Stat. and Const. Law, pp. 201, 202.

The judgment of the Circuit Court is, therefore, in all things reversed and set aside, with costs, and the cause remanded, with instructions to that court to sustain the demurrer to the complaint.

*T. F. Davidson, J. E. McDonald* and *A. L. Roache,* for appellants.

*J. Buchanan,* for appellees.