THE BOARD OF COMMISSIONERS OF FULTON COUNTY *v.* ONSTOTT.

BOUNTIES TO VOLUNTEERS.—The board of commissioners of *Fulton* county offered a bounty of $200 to each recruit who should enlist to fill the quota of said county A enlisted and caused himself to be credited to *Rochester* township, but at the time of his enlistment the quota of that township was already filled. The Provost Marshal of the District, without the knowledge or consent of A, caused him to be credited to another township, the quota of which was not full. Before A applied to the auditor for his bounty, certificates of muster for more men than were required to fill the quota of the county had been filed, but the auditor had not issued orders for as many as the quota. Suit by A against the county for the bounty.

*Held,* that he was entitled to recover.

*Held,* also, that the fact that the townships, and not the counties, were the districts to which the quotas were assigned, by the call for troops, did not affect the validity of the order.

APPEAL from the *Fulton* Circuit Court.

ELLIOTT, J.—This was a suit by *Onstott* against the board of commissioners of *Fulton* county, to recover a bounty of two hundred dollars offered by said board to each accepted volunteer to fill the quota of *Fulton* county, under a call of the President of the *United States.* Issues were formed and tried by the court, resulting in a finding and judgment for

the plaintiff. There was a special finding of the facts. The commissioners appeal, and the only question presented here is, do the facts of the case, as found by the court, sustain the finding and judgment for the plaintiff? The facts so found are in substance as follows:

On the 18th of *February*, 1864, said board of commissioners passed and duly entered upon their records the following order, viz: " Ordered by the board, that the sum of two hundred dollars be paid to each accepted volunteer who may enlist to aid in filling the quota of *Fulton* county, under the recent call of the President of the *United States;* and that upon presentation of a certificate to the auditor of said *Fulton* county, from the mustering officer, that he has been mustered into the service of the *United States*, and credited to said *Fulton* county as a part of her quota under said call, then the auditor is directed to issue an order on the county treasurer for the sum of two hundred dollars to said accepted volunteer."

And on the 12th of *March*, 1864, said board of commissioners also passed and duly entered on their records the following order: " Ordered by the board, that the auditor issue orders to fourteen more men for *Joseph Barber's* company; also for five certificates now on file, and for eight or nine men for company E, enlisted by *Hoober*, of *Wayne* township, and then to issue no more orders until further orders from the board."

At the date of the first order, *February* 18th, 1864, the quota of *Fulton* county under said call of the President was in all two hundred and thirty-three men, but under the regulations of the War Department, each township was a military sub-district, and at the date of said first order the quota of *Rochester* township in said county, under said call, was fifty-nine men. *Onstott* lived in *Miami* county with his parents, and heard of said order, by rumor, but had never seen it, or a copy of it, and did not learn its exact terms. On the 5th day of *March*, 1864, with a view to

obtain the bounty of one hundred dollars offered by the *United States*, and the bounty of two hundred dollars so offered by the commissioners of *Fulton* county, *Onstott* volunteered under said call to serve in the eleventh regiment of *Indiana* volunteers, and caused himself to be credited to said *Rochester* township, in said county of *Fulton*, and was duly mustered into service. At the time he was so mustered in, sixty-five others had volunteered and been mustered into the service under said call and credited to said *Rochester* township, which more than filled the quota of said township. On or about the 1st of *May*, 1866, and not before, *Onstott* presented to the auditor of said county the certificate of his having been so mustered into the service and credited to said township, and demanded that the order for two hundred dollars be issued to him, under said first order of said commissioners, which was refused.

*Kline G. Shryock*, who was then the Provost Marshal of the ninth congressional district of *Indiana*, of which *Fulton* county formed a part, without the request or knowledge of said *Onstott*, caused him to be credited to another township than *Rochester*, in said county, which at that time was deficient in its number of volunteers under said call, which act of said *Shryock* was approved and confirmed by his superior officers, and said *Onstott* thereafter served out his full term as one of the volunteers from *Fulton* county for the township to which he was so assigned, and thus the enlistment of said *Onstott* did, in fact, contribute to fill the quota of said county, as the same was made up of the aggregate of the several quotas of the townships therein.

Mustering in certificates of volunteers under said call, for more than two hundred and thirty-three men, who had been credited to the various townships in said county, had been presented to the auditor of said county, and orders for the bounty of two hundred dollars each demanded thereon, before the time of the presentation and demand on behalf of *Onstott*. There were two hundred and thirty-six persons enlisted and mustered into the service to fill the quota of

*Fulton* county under said call, being three more than the quota required, of which number *Onstott* was the 142d, in their consecutive order of enlistment. But the auditor has not issued orders for bounties under said call to two hundred and thirty-three men, the number required to fill the quota of the county.

We think the facts fully sustain the finding and judgment of the Circuit Court. The principal question urged by the appellant's counsel is based on the assumption that under the act of Congress, under which the call for troops was made by the President, counties were not required to furnish troops, and hence *Fulton* county had no quota to fill, and the order of the county board therefore imposed no legal obligation on the county. It is true that under the act of Congress each congressional district constituted a military district. The several townships were sub-districts, and the number of men required was apportioned among them, by which a given quota was required of each. But these townships are but subdivisions of the counties, and their corporate powers are confined to very narrow limits; they could not levy taxes and raise funds for such purposes. The whole people were alike interested in the cause that rendered the call for troops necessary. The necessities of the public service were pressingly urgent, and required the utmost promptness in bringing into service the required number of troops. These facts induced the county authorities to assume the responsibility of aiding their several townships in filling their quotas, which, in the aggregate, were regarded as the quota of the county, and provided for as such. These orders and appropriations were not authorized, in their inception, by the laws then existing, but they were legalized and made valid by the act of *March* 3d, 1865, and the validity of that act must be regarded as settled by repeated decisions of this court. See *King* v. *Course*, 25 Ind. 202, and the cases there cited.

Here, the finding of the court shows that *Onstott* complied substantially with every requirement of the order.

He was credited to a township whose quota was not then filled, and the county had the full benefit of his enlistment, and the law as well as good faith require that he should be paid.

The judgment is affirmed, with 10 per cent damages, and costs.

*D. D. Pratt*, for appellant.

*S. E. Perkins, L. Jordan* and *S. E. Perkins, jr.*, for appellee.