## McCollom et al. *v.* Shaw.

[No. 2,425.   Filed October 25, 1898.]

County Commissioners.—*Claims against County.*—*Appeal.*—An appeal may be taken to the circuit court from the action of the board of commissioners in allowing a claim against the county. *pp. 67, 68.*

Same.—*Services Rendered by Member of Board.*—*Compensation.*—The board of county commissioners has no power to enter into a contract with one of its members for services for the performance of which it might have employed other persons, nor allow compensation for such services voluntarily performed.   *pp. 68-74.*

Same.—*Services Rendered by Member of Board.*—*Compensation.*—A member of the board of county commissioners is not entitled to compensation for services in superintending the repair of property of the county at a time when the board was not in session. *pp. 68-74.*

From the Shelby Circuit Court.   *Reversed.*

*T. B. Adams, Isaac Carter* and *Wilson & Thompson,* for appellants.

*John C. Cheney, K. M. Hord* and *E. K. Adams,* for appellee.

Black, J.—The appellee, Jesse Shaw, a member of the board of commissioners of Shelby county, filed his claim before that board on the 10th day of June, 1896.   The claim was allowed on the same day by the other two members of the board, in the sum of $112.52.   Robert McCollom, one of the two appellants here (said board being the other appellant), as a citizen and taxpayer of said county, appealed to the court below, where, a motion to dismiss the appeal having been overruled, the cause was tried by the court.   In its special finding the court stated the facts substantially as follows:   The appellee, at the time in question, was a duly elected and acting member of the board of commissioners of said county.   He served as a member of the board for nine days at its regular March term, 1896, and for the same period at its reg-

ular June term, 1896; also for one day at a special called session on the 14th day of December, 1895, and for two days at a special called session on the 6th and 7th days of April, 1896. He paid out for the county for freight and postage due from it, as was necessary, fifty-two cents. We may here remark that it is agreed by counsel that as to these services at regular terms and special sessions of the board, the appellee was entitled to an allowance at the rate of $3.50 per day, and that he was entitled to be reimbursed for the amount of fifty-two cents so paid out by him. It is not denied that for the foregoing items the appellee might properly have been allowed the sum of $74.02. The dispute here relates to the other items of the claim, amounting to $38.50, which were shown in the special finding in substance as follows: The county owned 240 acres of land, upon which were situated certain buildings, described, and an orchard of 160 bearing apple trees. This farm was cultivated and managed by a superintendent elected by said board of commissioners, and residing on said premises, and said farm and buildings were maintained by said board as a "poor asylum," to provide for the paupers of said county, of whom there were twenty-five, who were supported and cared for there. In the spring of 1896, said buildings had become out of repair, so that the stone steps leading into a building had fallen into decay; the cellar walls leaked, and water passed into the cellar; and it became necessary to repair the cellar walls, and to put a cement floor in the cellar. It was also necessary to repair the wash-house, and to paint and re-paper and otherwise repair the main building, at a necessary outlay of a large sum of money; also to build a granary to store wheat raised on the premises. All the apple trees were of one variety, except three trees, and it

was proper and necessary that some of the trees should be grafted. Said board decided to make said repairs and improvements, and directed the appellee, as one of their body, to proceed to said poor asylum on the·30th of April and 4th of May, 1896, and to employ labor and procure material, and to point out the kind of repairs needed and desired, and to direct the same, which he did; and the employes were employed to do the work by the day, because the character of the work was such as to impress the board that this was the better way to do the' work. The board employed one Hugh Hoskins to graft the fruit trees under the direction of the board; and the board delegated to the appellee, as a member of the board, to meet said Hoskins on the farm on the 12th of May, 1896, and to point out to him the apple trees they desired grafted; also the number to be grafted with different varieties of fruit, and to see that the work was properly done, and to see that said repairs and improvements were progressing as directed; which service the appellee did as a member of said board. The county owned a court-house, county jail, and jailer's residence at Shelbyville, and it became necessary to put in water-closets in the jail, jailer's residence, and court-house, and· to build sewers connecting with a sewer in a public street; also to have a large amount of plumbing done in said buildings, to remove an iron railing in the court-room, to change the interior thereof, and to purchase a carpet for the court-room and to make other improvements; all of which was ordered by said board. On the 9th and 15th of May, 1896, the appellee, as a member of said board, and at its request, served two days in supervising said work, overseeing the same, and conducting it according to the wish of the board. Said board had

in contemplation the adoption for said asylum of a water system and a heating system, the necessity for which was stated at length in the finding, and, having heard that Marion county, Indiana, had successful systems in operation, said board, on the 20th day of December, 1895, visited the Marion county asylum, to examine said systems, with a view of gaining information in reference thereto, or of adopting the same or some other system in Shelby county; and also examined into the management of said institution, with a view of adopting all useful suggestions.

On the 11th of January, 1896, the appellee and another member of said board served as such one day in employing labor, buying material, having a door cut in a heavy brick wall, to convert an old vault in the court-house into a room for an office by direction of said board, which was afterward occupied as an office by the county superintendent of schools.

February 27, 1896, the appellee, with the other members of said board, served one day as such in making a proper and necessary visit to the poor asylum, for the purpose of taking an inventory of the personal property of the county in possession of an outgoing superintendent, and to see that he was properly accounting for the same.

On the 12th of March, 1896, a new superintendent having been installed in the poor asylum, it became necessary and proper, it was found, for the appellee and the other members of the board to visit said asylum, and to advise and direct him as to the management and control of the paupers of said asylum, which they did.

A public bridge over Blue river had become out of repair, and said board decided to repair it; and on the 14th of April, by direction of the board, one of their number went to a mill to purchase lumber for the re-

McCollom v. Shaw.

pairs, and the appellee, with the other member, was directed by the board to employ the hands, tear up the old floor, and direct the employes when and how to put down the new floor and direct the work on the same, which was done by the appellee. It became proper and necessary for said board to erect a bridge over Big Sugar creek, which the board decided to do, and said board, with the appellee as a member, served one day in locating said bridge, and in staking off the location for the abutments and piers, on a day when the board was not in regular or special session, but had come together on their own motion to locate the bridge. At the time the appellee rendered the services in looking after the repairs at the poor farm, the courthouse, the county bridges, and when he visited the Marion county poor farm, the board of commissioners was not in a regular, special, or called session.

Upon these facts the court stated as its conclusions of law, that the appellee served as a member of the board of commissioners of Shelby county, in the discharge of his duty as such commissioner, for thirty-two days, and expended fifty-two cents for the county, which he should have refunded to him, and that he should recover against said board $112.52, and that the appellant McCollom should pay the costs; to which conclusions the appellant McCollom excepted.

It is contended on behalf of the appellee that the court erred in overruling the motion to dismiss the appeal, it being suggested in argument that no appeal lies from the action of a board of county commissioners in allowing a claim against the county. The right of appeal in such cases is provided by statute and recognized by many decisions. See sections 7856, 7859, Burns' R. S. 1894 (5769, 5772, Horner's R. S. 1897); *Myers* v. *Gibson*, 147 Ind. 452; *Gemmill* v. *Ar-*

thur, 125 Ind. 258; *Waymire* v. *Powell*, 105 Ind. 328; *Holman* v. *Robbins*, 5 Ind. App. 436; *Van Auken* v. *Hook*, 6 Ind. App. 610.

The allowance to the appellee, aside from his reimbursement for the small sum paid by him for freight and postage, was stated by the court to be for service for thirty-two days as a member of the board of commissioners of the county in the discharge of his duties as such commissioner, at the rate of $3.50 per day. It appears that the services thus compensated were rendered on twenty-one days when the board was in session, and on eleven days when the board was not in session, and the dispute before us relates solely to the rightfulness of the allowance for these eleven days. The powers of the board of county commissioners are statutory, and all its acts must be expressly or impliedly authorized by statute. *Gavin* v. *Board, etc.*, 104 Ind. 201; *Board, etc.*, v. *Barnes*, 123 Ind. 403; *Board, etc.*, v. *Bradford*, 72 Ind. 455, 37 Am. Rep. 174; *Hight* v. *Board, etc.*, 68 Ind. 575; *Badger* v. *Merry*, 139 Ind. 631; *State, ex rel.*, v. *Hart*, 144 Ind. 107; *Myers* v. *Gibson, supra*. That the law will not uphold or tolerate contracts made by the board of county commissioners with one or more of its members for services for the performance of which it might have employed other persons, and that no allowance may be made by the board by way of compensation for such services voluntarily rendered for the county, is well established. *Waymire* v. *Powell, supra; Pratt* v. *Luther*, 45 Ind. 250; *Stropes* v. *Board, etc.*, 72 Ind. 42; *Hornung* v. *State, ex rel.*, 116 Ind. 458; *Brown* v. *First National Bank*, 137 Ind. 655, 667. Therefore, it is not pretended on behalf of the appellee that the services rendered by him when the board was not in session were rendered by way of performance of contracts, or that compensation could properly be allowed for them as

McCollom *v.* Shaw.

for services voluntarily rendered. His account allowed by the board purported to be for services rendered as a county commissioner, and as to those services rendered when the board was not in session it is claimed in argument on his behalf that he was acting under authority delegated to him from the board in session, and also that he performed the services in the capacity of a county commissioner. The compensation allowed by the board does not appear to have been regulated, either in the statement of the account or in the allowance thereof, by any contract price, or by the value of the services, but he claimed and was allowed the statutory compensation per diem for the discharge of his duties as a county commissioner. If such services were within his duties as county commissioner, the authority to render them at the expense of the county must appear in the statutes.

It is provided by the state constitution (art. 6, section 10), that the General Assembly may confer upon the boards doing county business in the several counties powers of a local administrative character. The statutes relating to the organization of boards of county commissioners, their powers and duties, indicate that the duties of a county commissioner are to be performed, and his official authority is to be exercised (at least where there is no special provision to the contrary), as a member of the board of which he is a constituent part at lawfully convened sessions of the board. By the terms of the statute, section 7820, Burns' R. S. 1894 (5735, Horner's R. S. 1897), the commissioners are to be considered a body corporate and politic by the name and style of "The board of commissioners of the county of ——," and as such, and in such name may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, not inconsistent with the provisions of the act

of which this provision forms a part. Much stress is placed by counsel upon this statutory declaration of corporate power. But the powers incident to corporations thus announced are limited to such as are not inconsistent with express statutory provisions. Such powers are conferred upon the commissioners not individually, but collectively as a board, acting as such within the limited authority and according to the expressed methods of the statutes.

There is not only a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a county or city organized for public purposes only, and whose obligations must be paid from public funds raised for public purposes only, a corporation of which latter class may always defend on the ground that a supposed contract was outside the authority conferred on it by law (*Driftwood Valley Turnpike Co.* v. *Board, etc.,* 72 Ind. 226; *Rissing* v. *City of Fort Wayne,* 137 Ind. 427); but there is a distinction also between the corporate character of a county and that of such municipal corporations as cities and towns. Robinson County and Township Officers, section 4; *Board, etc.,* v. *Allman,* 142 Ind. 573. "Considered with respect to their corporate powers, counties rank low down in the scale of corporate existence, and are frequently termed *quasi* corporations." *State, ex rel.,* v. *Hart,* 144 Ind. 107. "The powers of the board of commissioners are limited, and for any act done by them not within the scope of their powers, the county is not liable." *State, ex rel.,* v. *Hart, supra.* In *Potts* v. *Henderson,* 2 Ind. 327, it was held that a statute authorizing boards of county commissioners to contract for building bridges, and to appoint one or more persons to superintend the same, did not empower the commissioners to appoint agents to make

such contracts. Where a contract between a board of commissioners and an architect provided that the board had the right to order changes in the plans and specifications, it was held that this meant that the request to make changes should come from the board acting officially, and not from a member of the board acting individually and in his private capacity. *Board, etc.*, v. *Bunting*, 111 Ind. 143. In *Archer* v. *Board, etc.*, 3 Blackf. 501, an action against a board of county commissioners to recover for work and labor and for goods sold and delivered, it was said: "The defendants are only chargeable in their corporate capacity. No act of theirs, relative to the subject-matter of this action, could render them liable in their character of commissioners, unless such act was done by them at a regular meeting of the board at the time fixed by law." See, also, *Campbell* v. *Brackenridge*, 8 Blackf. 471; *Potts* v. *Henderson, supra*. In *Board, etc.*, v. *Chitwood*, 8 Ind. 504, it was held that a board of county commissioners could not meet at any time other than in the terms prescribed by statute, and that it could only transact business as a board when legally in session. In *Board, etc.*, v. *Ross*, 46 Ind. 404, it was said that it would be making a dangerous precedent to hold that county commissioners could do acts binding on the county when not in session, or when acting successively and separately. In *Torr* v. *State, ex rel.*, 115 Ind. 188, it was said: "As a matter of course, a board of commissioners must be lawfully in session in order to do any valid official business, and it cannot lawfully convene itself in special session by an order adjourning over beyond the term, to a day in vacation." The commissioners cannot lawfully convene as a board except at the times prescribed by statute, unless called in special session by the auditor or other county officer designated by stat-

ute. See *Jussen* v. *Board, etc.*, 95 Ind. 567; *Wilson* v. *Board, etc.*, 68 Ind. 507; *Board, etc.*, v. *Brown*, 28 Ind. 161; *Oliver* v. *Keightley*, 24 Ind. 514. The board of commissioners has incidental implied powers, but they are such that without them it could not adequately perform its express powers in full accordance with the purpose of the legislature. For any supposed power there must be a legislative enactment to which it may be referred legitimately. See *Board, etc.*, v. *Barnes*, 123 Ind. 403. In *Waymire* v. *Powell*, 105 Ind. 328, it was held that a board of county commissioners had no authority to order an allowance of $3.50 for per diem as a commissioner of said board for one day's service in inspecting, examining and measuring the stone abutments of a certain new bridge. It was said: "The order recites that the allowance was for 'per diem as a commissioner of the board,' etc., but it also shows that it was not for attendance as a member of the county board or board of equalization, and it was, therefore, made without any authority of law." The statute in relation to the compensation of county commissioners in force when the order in that case was made, and quoted in the opinion of the Supreme Court, provided (section 5823, R. S. 1881): "The county commissioners' fees shall be as follows: For each day's attendance as a member of the county board or board of equalization each commissioner shall receive $3.50." This was superseded by section 1 of an act of 1889 (Acts 1889, p. 186, section 7926, Burns' R. S. 1894, 5823, Horner's R. S. 1897), entitled, "An act fixing the salaries of county commissioners," etc., said section 1 being as follows: "That the county commissioners of this state shall each receive for their services as such commissioners for each day engaged in the discharge of their duties as such commissioners the sum of $3.50; provided, that in counties where the population shall

exceed 100,000 as shown by the last census, such commissioners shall each receive, in lieu of such per diem, the sum of $1,800 per annum, to be paid out of the county treasury. "

It is claimed for the appellee that the difference in the terms of the existing statutory provision in relation to the compensation of county commissioners and that which it superseded should distinguish the case at bar from a case involving an application of the superseded statute. While the statute in its present form entitles county commissioners to receive the designated sum for their services as such commissioners for each day engaged in the discharge of their duties as such commissioners, they were formerly entitled to receive the same sum for each day's attendance as a member of the county board or board of equalization. The later statute of 1889 does not change the character of the official duties of the commissioners, and so far as their official powers and duties remain unchanged by statute, the services for which they may receive compensation as officials remain the same as under the earlier statute. So far as any of the services rendered by the appellee on the eleven days in question are concerned, no statute has been pointed out to us, and none is found by us, except such as forbid an implication that the rendering of such services by a county commissioner alone, or jointly with other commissioners, when not participating as a member of the county board in a lawful session of the corporate body, entitles him to any compensation therefor from the county. If differences exist between the county commissioners and the county officer who alone has authority to call the board to meet in special session, the determination by that officer of the question whether or not the public interests demand that such a meeting be convened, having been

committed by statute to him, instead of the commissioners, or any of them, cannot be reversed, or set aside, or ignored by them or any of them. They cannot, while in lawful session, prepare for circumventing such determination; and cannot, whether in lawful session or not, in effect contract with themselves to render unofficial service under a pretense of a delegation of their official authority as a board to the individual members thereof. The services in dispute not having been rendered by the commissioner in discharge of his duties as such, he is not entitled to compensation for them. The judgment is reversed, and the cause is remanded with instruction to state conclusions of law in accordance with this opinion.